## VAN DOREN v. VAN DOREN LAUNDRY SERVICE, Inc.

## VAN DOREN LAUNDRY SERVICE, Inc. v. VAN DOREN.

### Nos. 9279, 9291.

Circuit Court of Appeals, Third Circuit.
Argued May 6, 1947.
Decided July 9, 1947.

---

1008

Edward V. Ryan, Asst. U. S. Atty., of Newark, N. J., (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellant.

John F. Ryan, of Elizabeth, N. J. (William M. Beard, of Westfield, N. J., on the brief), for appellee.

Before BIGGS, McLAUGHLIN and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

The cross-appeals in this case raise questions concerning the reemployment provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 308. Petitioner has sought (a) reinstatement to the positions of office manager and purchasing agent of respondent, and (b) payment of compensation for the period during which he was denied such restoration. In the court below, the chief grounds of defense asserted by respondent were based upon petitioner's physical condition and a change of circumstances alleged to render "unreasonable" the reemployment of petitioner. The trial judge ordered the reinstatement of petitioner, but denied compensation for the period when he remained unemployed. 1946, 68 F.Supp. 938. Both parties have appealed.

Respondent now asserts three grounds for reversal: (1) petitioner failed to make timely application for reinstatement; (2) the lower court erred in rejecting proffered testimony; and (3) the positions to which petitioner has sought reinstatement were merely temporary. Respondent further contends that, although petitioner was reinstated several days after the lower court decision, these issues have not become moot, since the purpose of the restoration was to abide by the judgment of the lower court and prevent the accumulation of damages. See Boston & M. R. R. v. Bentubo, 1 Cir., 1947, 160 F.2d 326.

Respondent points out that petitioner was not issued an honorable discharge until December 27, 1944, and avers that no application for reemployment was made within 90 days after that date. Testimony at the trial established that, on December 2, 1943, petitioner was issued a Certificate of Service and was transferred to the enlisted reserve corps "to accept employment in essential industry including agriculture." Respondent, at the trial, took the position that petitioner at no time subsequent to issue of the Certificate of Service made definite application for reinstatement. The trial court, however, found that such application had been made and was a continuing one. There being substantial evidence to support the trial court's finding on a closely contested question of fact, we are not disposed to weigh the evidence anew. Since the application was of a continuing nature, the statutory requirement that it be made within 90 days after he was "relieved from such training and service" was met in this case.

The testimony which the trial court rejected tended to show that, while petitioner was in the military service, respondent faced a financial crisis; and that respondent was able to raise funds to meet that exigency only by committing itself to paying no additional salaries and creating no new jobs. We believe the trial court did not err in excluding that testimony. Whatever the financial status of respondent may have been while petitioner was in the military service, it seems clear that, when he became eligible for reinstatement upon receipt of his honorable discharge, his reemployment would not have been "unreasonable" within the meaning of 50 U.S.C.A. Appendix, § 308 (b) (B). We note that, according to the testimony of the president of respondent, the financial difficulties of respondent had virtually disappeared by the end of 1944. Moreover, the alleged prohibition against additional salaries and jobs was not so stringent as to prevent respondent from raising the salary of petitioner's brother-in-law from $60 per week at the time of petitioner's induction to $110 per week at the time of trial; nor, apparently, was respondent barred from offering petitioner an inferior job at a lower rate of pay in May, 1944. While the reinstatement of petitioner conceivably might have resulted in some loss of efficiency or economy of operation, we have stated consistently that such impairment, in and of itself, does not render reemployment "unreasonable." See Kay v. General Cable Corporation, 3 Cir., 1944, 144 F.2d 653, 655, and Featherston v. Jersey Central Power & Light Co., 3 Cir., 1947, 161 F.2d 1000.

■ The contention that the positions to which petitioner has sought restoration were only temporary is grounded on the theory that those positions were merely incidental to elective positions held by petitioner. The record indicates otherwise. Petitioner had been employed by respondent long before he was elected an officer of respondent. As director, he was paid $10 for each meeting he attended; as treasurer, he served without pay. On the other hand, at the time of his induction he was being paid $80 per week, as office manager and purchasing agent. We believe the lower court was fully justified in determining that his was "other than a temporary position." 50 U.S.C.A. Appendix, § 308 (b).

Accordingly, that portion of the judgment which orders the reemployment of petitioner must be affirmed. We now pass to the consideration of petitioner's appeal.

■ Petitioner urges that compensation for loss of wages is made mandatory by 50 U.S.C.A. Appendix, § 308 (e); but that, even if the granting of compensation is discretionary, the failure to do so in the instant case was an abuse of discretion.

Examination of the legislative history of the compensation provision does not leave us free from doubt as to what the lawmakers intended. The provision was originally introduced by Senator Wagner in the form of a floor amendment to the then pending Selective Training and Service Act of 1940. Senator Wagner explained to the upper chamber that the amendment was designed to grant, to the ex-serviceman suing for reinstatement, those wages lost during the interval between his application for reemployment and the judicial determination.[1] Representative Healey, who later introduced an identical amendment on the floor of the House of Representatives, stressed that reinstate- should necessarily be accompanied by the awarding of wages lost or damages suffered by the applicant.[2] Both legislative bodies

---

[1] Pertinent excerpts from the discussion on the floor of the Senate are quoted herewith:

Mr. Wagner, 86 Cong. Rec. p. 10925: "The reason why I suggest that amendment is that while there is a provision in the bill making the United States district court available to the individual for reinstatement if the employer refuses to reinstate him, if there should be a delay, say, of a month or 6 weeks and the individual should receive judgment of reinstatement, there is no provision in the bill for the payment of wages during the period the action was pending and the individual was out of employment. It seems to me the wages ought to begin from the time the application for reinstatement is made providing the application is upheld by the court."

Id. at p. 11031: "We now provide under the bill, in the case of one who has served under the draft and has ended his service and seeks reemployment in his former position, that in the event the employer refuses to reemploy the individual he then may petition the court for reinstatement, and then the court of course must proceed by hearing, and reach a determination. It may happen that a period of 1 or 2 or 3 months will elapse before the court enters its judgment. In the meantime, if the employee is found by the court to be entitled to return to his position, he has been out of employment for a period of 1 to 3 months, and no authority is given the court to give him judgment for back pay during that period. The amendment simply provides that in addition to entering judgment finding that the employer has violated the law and that the individual is entitled to reemployment, the court may also order that he shall receive back pay for lost wages due to the violation of the law."

[2] Mr. Healey's remarks were as follows: "Mr. Chairman, this amendment merely gives the courts, after a decision has been reached in favor of the applicant for relief from failure to reinstate, power to assess as damages the loss of wages suffered by such applicant from the time he applies for reinstatement up to the time that the court finds that such reinstatement is justified on the facts and circumstances of the case. You have held out to these men you are going to induct into service that you will restore them insofar as you have the power to restore them to their status quo before they were inducted into the service. It seems to me it is a matter of simple justice that if on all the facts the court finds that it is not unreasonable or impossible to reinstate that man, and the private employer has refused and thereby violated the provisions of this section by such refusal, the court ought to have the power to reinstate the man and assess as damages the loss of wages he has suffered from the time he applied for reinstatement until the court renders a decision in his favor.

approved of the amendment with a minimum of debate.

The Circuit Court of Appeals for the First Circuit, confronted with the same question, has decided that the compensation provision is not mandatory. Boston & M. R. R. v. Bentubo, supra. We find it unnecessary to pass upon the issue at this time; for, under the view we take of the case sub judice, even if the granting of compensation be deemed discretionary, we believe that denial in the instant case was improper.

Review of the record impels the conclusion that the failure of respondent to reinstate petitioner was attributable basically to what the trial judge described as "a family quarrel, a family fight." This was a small corporation, started by the father of petitioner in 1921, only four years before petitioner entered its employment. In 1927, petitioner suffered a head injury which made him subject to occasional attacks of Jacksonian epilepsy. Despite this malady, however, petitioner remained employed by respondent from 1927 until his induction. His uncontroverted testimony was that his physical condition was at least as good when he reverted to civilian status as it had been at induction. While respondent pleaded petitioner's physical condition as a defense in the court below, it at no time prior to that trial appears to have informed petitioner that his physical handicap was a factor in the decision not to employ him. In fact, the only excuse which seems to have been offered him, prior to trial, was the financial position of the company, and that explanation was tempered with implied, if not express, promises that his restoration would be effected as soon as the reorganization proceedings were terminated.

The reorganization proceedings were utilized not only to induce petitioner to refrain from pressing his claim to reinstatement, but also to weaken appreciably his bargaining position. Petitioner had inherited from his father more than 20% of the voting common stock outstanding, which was an interest vital to determining control of the corporation. The officers of respondent, stressing alleged necessity, persuaded him to surrender to a voting trust his voting rights. Even if the tactics of respondent were exercised with an honest desire to benefit the corporation, it cannot be said that the status and rights of a man past his prime, afflicted with a malady, and dependent solely upon the corporation for his continued employment, received sympathetic treatment. As between the two parties, therefore, it seems to us that equitable considerations dictate that the financial loss suffered by petitioner in being denied reinstatement be placed upon respondent. To hold otherwise would result in precisely the type of hardship which the amendment was designed to eliminate.

This conclusion is strengthened when we examine the grounds upon which the trial court denied the money judgment. The trial court emphasized the facts that this was a family quarrel and that respondent was undergoing reorganization when petitioner received his Certificate of Service. Internecine warfare within a corporate body, however, is not recognized by the controlling statute as a valid reason for refusal to reinstate the ex-serviceman; nor should the actuality of its existence call for a ruling which favors those in control over an individual with impaired physical and bargaining powers who has served the colors. As for the reorganization, it is sufficient to note that the trial judge had doubts as to the necessity of that step,[3] and that the reorganization proceedings were concluded

"Did you ever hear of a reinstatement ever being ordered by a tribunal of justice that did not also restore the wages that were lost or the damages that were suffered by the applicant who such body had determined ought to be reinstated and restored to his status quo?" 86 Cong. Rec. p. 11703 ff.

[3] The trial judge said, 68 F.Supp. 938, at 940: "I can not recognize that this company is on the verge of bankruptcy or will go bankrupt if he is ordered back, but I do recognize they were in reorganization. Why, I do not know because they had a lot of assets in buildings and trucks without too great a debt, but that is for the men who are running the business to determine. I also recognize that it was serious enough to file reorganization proceedings in this court which had given them serious concern."

long before petitioner's honorable discharge.

■ Having determined that a money judgement should also have been granted petitioner, we must reverse the judgment and remand for computation of the sum due him. As we have indicated above, petitioner's right to reinstatement matured when he received his honorable discharge on December 27, 1944. See Tipper v. Northern Pac. Ry. Co., D.C., 1945, 62 F. Supp. 853. This raises the question whether the delay in filing suit defeats petitioner's right. If the delay is not attributable to petitioner,[4] it follows that petitioner was entitled not only to reinstatement, but also to compensation with interest thereon for the period of December 27, 1944, to December 27, 1945. See Dodds v. Williams, D.C. 1946, 68 F. Supp. 995, 997.

Reversed and remanded.

---

[4] Petitioner has been represented by a United States Attorney. According to petitioner's counsel, the case did not reach court earlier because of factors beyond petitioner's control. His brief alleges that "He pressed for his rights constantly and at no time did anything by act of omission or commission which in the slightest degree indicated an abandonment of his claim, or which contributed to the delay in filing this suit." Cf. Karas v. Klein, D.C.1947, 70 F.Supp. 469; Dacey v. Bethlehem Steel Co., D.C.1946, 66 F.Supp. 161; Kay v. General Cable Corp., D.C.1945, 59 F.Supp. 358.