**Michael CHURMA, Appellant,**

v.

**UNITED STATES STEEL CORPORATION.**

No. 74–1584.

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1975.

Decided April 4, 1975.

Carla A. Hills, Asst. Atty. Gen., Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., Robert E. Kopp, Karen K. Siegel, Thomas G. Wilson, Attys., Dept. of Justice, Appellate Section, Civil Div., Washington, D. C., for appellant.

Henry J. Wallace, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee; George G. Stout, Pittsburgh, Pa., of counsel.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Plaintiff Michael Churma appeals from a district court judgment[1] which dismissed as time-barred his action for adjustment of his employment seniority status.[2] We affirm that judgment.

---

1. Churma v. United States Steel Corp., Civ. Action No. 72–38 (W.D.Pa., Feb. 14, 1974).

2. The district court held the action barred by laches and the six-year statute of limitations, 12 Purdon's Pa.Stats. § 31. Plaintiff concedes that "any back pay award is barred by the statute of limitations," brief for the appellant at 11–12. He appeals only the holding that

any seniority adjustment is also time-barred. We agree with Churma that the trial court erred in applying the statute of limitations to bar the equitable claim for seniority adjustment. Gruca v. United States Steel Corp., 495 F.2d 1252, 1256 (3d Cir. 1974). Since the district court also found the claim barred by laches, however, this error was harmless.

When he entered military service in November 1961, Churma was employed by United States Steel Corporation[3] as a Production Record Clerk, Production Planning Department, 160 Inch Mill, Job Class 5.[4] This position was one of a number of jobs which form the Production Planning Pool. All employees are hired into a pool job. Employees can then bid for the bottom job in one of several promotional sequences, one of which is the 160 Inch Mill. The bidding employee with the greatest continuous department service is awarded the job.[5] On October 26, 1961, before his tour of duty with the Army, Churma bid for the bottom job in the 160 Inch Mill, but it was awarded to an employee having greater seniority. On at least six occasions in 1962, while Churma was on active military duty, he bid for the same bottom job. On four of these occasions, the job was awarded to employees with more seniority. However, awards were also made to two employees, Joseph Baksi and George Toth, who would have had less seniority right to the job than Churma[6] had he been working, rather than serving in the Army, at that time. Company policy in force in 1962 precluded Churma from consideration for any of these openings. Churma received an honorable discharge on November 13, 1963, and made a timely application for reemployment.[7] He was rehired by the Company on December 2, 1963, at the same position he had left in November 1961.[8] Churma's assigned seniority date

3. Hereinafter referred to as the Company.

4. Churma was first employed by United States Steel on September 10, 1956, as a messenger in the Accounting Department. He was laid off due to lack of work from February 1958 to February 1959, when he resumed his messenger job. He was again laid off in June 1960. Rehired June 13, 1961, as a Production Record Clerk, he was laid off June 17, 1961, and finally recalled as an Order Progress Clerk on August 1, 1961. On November 9, 1961, his last day of work before he entered the Army, Churma was a Production Record Clerk.

5. In its answer to plaintiff's Interrogatory No. 1 of the second set of interrogatories, the Company stated that "[e]ach job is awarded by the supervisor of that job after he has evaluated those employees who have bid for the job." The collective bargaining agreement between the United Steelworkers of America and the Company, § 13 under "Seniority," sets forth ability and physical fitness, in addition to length of service, as criteria for promotion. However, testimony was given at trial that only seniority was actually considered in determining the successful bidder for a job. See, e. g., N.T. 189. But see N.T. 246, 264–65.

6. Baksi and Toth were senior to Churma in terms of corporate and plant seniority, but junior to Churma in departmental and unit seniority.

7. Churma sought reemployment pursuant to 50 U.S.C. App. § 459, which provides in pertinent part:
   "(a) Any person inducted into the armed forces under this title . . . for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service under section 4(b) . . . shall be entitled to a certificate to that effect upon the completion of such period of training and service

   . . . . .

   "(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer who (1) receives such certificate, and (2) makes application for reemployment within ninety days after he is relieved from such training and service . . .

   .    .    .    .    .

   "(B) if such position was in the employ of a private employer, such person shall—
   (1) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest to such position or to a position of like seniority, status, and pay;

   .    .    .    .    .

   unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

   .    .    .    .    .

   (2) It is declared to be the sense of the Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment."

8. As a result of a classification grievance settlement, Churma's job was reclassified and retitled "Inventory Clerk (Slab Control) . . . Hourly 7." This change became effective December 15, 1963, and the job became the bottom job in the 160 Inch Mill promotional sequence.

on the job was June 13, 1961; the same date established his unit and departmental seniority. He nevertheless progressed along the promotional sequence behind Baksi and Toth, who had not transferred into the bottom job in the 160 Inch Mill until April 1962.[9] See N.T. 183; Amended Pretrial Stipulation.

Some six years after Churma returned from the Army, Foremsky v. United States Steel Corp., 297 F.Supp. 1094 (W.D.Pa.1968), invalidated the Company's practice of rehiring veterans into the same job category they had occupied at the time they entered military service. The Foremsky court held that a veteran was "entitled to the seniority rights he would have acquired had his employment not been interrupted by military service." 297 F.Supp. at 1097. When Churma learned of both the decision and the availability of assistance from the Department of Labor,[10] he immediately filed a complaint with the Department, requesting an adjustment of his seniority status.[11] The Department promptly notified the Company of Churma's claim and entered into unsuccessful negotiations to advance Churma's name ahead of Toth's [12] on the seniority list.[13]

In dismissing the claim eventually filed in the district court pursuant to 50 U.S.C.App. § 459(d), the court found that Churma had "delayed from the time his

rights accrued on December 2, 1963, until January 17, 1972, to institute suit." Churma v. United States Steel Corp., Civ. Action No. 72–38 (W.D. Pa., at 7a, slip op.). The court also found that Churma was not to blame for the three years that the Department spent seeking to negotiate with the Company. Nevertheless, Churma was found to have indulged in "inordinate delay" by taking no action to adjust his status prior to March 1969. Id. Since Churma had failed to carry the burden of proving both that the delay was excusable and that the defendant had suffered no undue prejudice from that delay, the court held the action barred by laches.[14] Churma then filed a timely appeal to this court.

## I. STANDARD OF REVIEW

On appeal, Churma argues that "the district court abused its discretion in applying laches to bar the claim . . . ." Brief for the appellant at 10–11. We do not agree, however, that our review is limited solely to inquiring whether the district court has abused its discretion.

"Though the existence of laches is a question primarily addressed to the discretion of the trial court," Gardner v. Panama R. Co., 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31 (1951), that discretion

9. Baksi received an "excluded" job—one which is outside the bargaining unit here involved—on September 14, 1969. Thus Baksi is no longer on the seniority list. At the time of this appeal, Churma's seniority status was still junior to Toth's.

10. Hereinafter referred to as the Department.

11. Churma testified that he first learned of the availability of assistance from the Department in March 1969 during a conversation with Bob Foremsky, the successful plaintiff in Foremsky v. United States Steel Corp., supra. N.T. 31–33; 68–69. He also testified that prior to filing the complaint with the Department of Labor, he had contacted a union grievance representative, Eugene Boytim, to complain about the rejection of his bids in April 1962 and the awarding of the jobs to Toth and Baksi. Boytim informed Churma that positions could not be awarded to persons not present to peform job duties, and Churma "didn't pursue the is-

sue." N.T. 22. Mr. Boytim, who testified that he was no longer a grievance man in December 1963, was unable to recall this incident. N.T. 96; 131. There was also testimony from Gene Pallotta, another grievance man, that he had registered informal complaints with various management personnel about Churma's seniority, on an average of one complaint a week. N.T. 150, 155, 166–67, 171–72. This testimony was found to be incredible by the district court since the people to whom Pallotta allegedly complained had been transferred or retired before Churma retired from the Army, or else had denied receiving complaints from Pallotta. N.T. 223, 236–37; 247.

12. See note 9, supra.

13. The Company has applied the Foremsky rule "prospectively but not retroactively." Amended Pretrial Stipulation, p. 7.

14. See note 2 supra.

is free to operate only within narrowly defined parameters. "Where there has been no inexcusable delay in seeking a remedy and where no prejudice to the defendant has ensued from the mere passage of time, there should be no bar to relief." *Id.* at 30–31, 72 S.Ct. at 13. These elements of laches—"inexcusable delay in light of the equities of the case and prejudice to the defendant" [15]—comprise not only discretionary components but also questions of law and fact, which are to be reviewed as such. See Katz v. Carte Blanche, 496 F.2d 747, 756–57 (3d Cir. 1974). Both the length of delay and the existence of prejudice are questions of fact to be reviewed by this court according to the "clearly erroneous" standard. See Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 215–16, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972); F.R. Civ.P. 52(a). On the other hand, the conclusion that a delay is "inexcusable" comprehends both the application of a legal standard and an exercise of the trial court's sound discretion in assessing the equitable circumstances of a particular case. See Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533–34, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). Whether the district court has utilized the correct legal principles is freely reviewable by this court, but we will not disturb the trial judge's assessment of the equities absent an abuse of discretion. *Cf.* Sobosle v. United States Steel Corp., 359 F.2d 7, 13 (3d Cir. 1966).

Churma does not argue that the trial court erred in terming his delay "inexcusable." He attacks instead both the factual finding of prejudice to the Company and the allocation of the proof burden on the issue of laches. Since the correctness of the district court's finding of prejudice, even under the "clearly erroneous" standard is a function of the burden of proof in this case, we will examine the propriety of that allocation first.

15. Burke v. Gateway Clipper, Inc., 441 F.2d 946, 949 (3d Cir. 1971).

16. In *Burke*, suit was filed after the applicable statute of limitations had run.

## II. BURDEN OF PROOF

The district court dismissed Churma's complaint on February 14, 1974, and the notice of appeal was filed on March 14, 1974. Churma argues that the controlling rule on burden of proof is that set forth in Gruca v. United States Steel Corp., 495 F.2d 1252 (3d Cir.), which was decided on April 17, 1974.

Before *Gruca*, the Third Circuit rule concerning burden of proof as to laches was that enunciated in Burke v. Gateway Clipper, Inc., 441 F.2d 946 (3d Cir. 1971), which was relied upon by the district court in this case. *Burke* recognized that other circuits required the defendant to prove laches as an affirmative defense, but reaffirmed that in this circuit the plaintiff had to "come forward and prove that his delay was excusable and that it did not unduly prejudice the defendant." 441 F.2d at 949. *Gruca*, while consistent with *Burke*,[16] made clear that the allocation of the burden depends on whether the statute of limitations has run. Prior to the running of the statute, the defendant has to prove laches, but thereafter the plaintiff has to disprove laches. 495 F.2d at 1259 and n. 8.

In arguing that the *Gruca* rule would have required the Company to prove laches, Churma notes that the district court found the delay "during the time when the matter was pending before the Department of Labor" was not attributable to Churma. Slip op. at 7a. The five-year and three-month delay which the district court did charge to Churma would then be insufficient to shift the burden from the Company. However, we find ourselves in agreement not with the district court, but with the Fifth Circuit cases holding that the Department's tardiness does accrue against the veteran who seeks its aid. Bell v. Aerodex, Inc., 473 F.2d 869, 873 (5th Cir. 1973); Blair v. Page Aircraft Maintenance, Inc., 467 F.2d 815, 819–20 (5th Cir. 1972).[17] To hold, as Churma

17. *Gruca* did not decide this issue. 495 F.2d at 1259, n. 9.

urges,[18] that filing a complaint with the Department prior to the running of the statute effectively shifts the burden of proof on laches to the employer would tend to defeat Congress' aim of settling these matters expeditiously, see *Blair, supra* at 820, and vitiate the protection against stale claims which both the statute of limitations and the *Gruca* rule were designed to afford.[19] 495 F.2d at 1258. As the court noted in *Blair,* the defendant is no less disadvantaged by the lapse of time merely because that lapse is occasioned by the Department's inaction rather than the veteran's. See 467 F.2d at 820. With the Department's delay thus attributable to Churma, under *Gruca* as well as under *Burke,* the burden was on Churma to disprove the elements of laches.[20]

## III. PREJUDICE

■ Churma attacks the district court's finding of prejudice as unsupported by the record.[21] Under our analysis at Part II, *supra,* however, the relevant inquiry is whether the record supports Churma's claim of "no prejudice." If he introduced no credible evidence on the point, the district court's ruling is not clearly erroneous and must be up-

held. See *Burke, supra,* 441 F.2d at 949; *Gruca, supra,* 495 F.2d at 1260. We find in the record no evidence on the point offered by Churma. Conversely, there *is* support for the district court's conclusion. See, *e. g.,* N.T. 112–19; 225–32; 238–42; 252–61. On this record, we are unable to hold that the district court's finding of prejudice is clearly erroneous.

For the foregoing reasons, the judgment of the district court will be affirmed.

**18.** Churma relies on this court's case of Van Doren v. Van Doren Laundry Services, 162 F.2d 1007 (3d Cir. 1947), for the proposition that the Department's delay is not chargeable to the veteran for purposes of invoking the statute of limitations. *Van Doren,* however, found the veteran blameless for the delay in bringing suit not merely because he was represented by the United States Attorney, but because "factors beyond [his] control" precluded him from suing sooner. The court also noted that Van Doren had constantly pressed his claims " 'and at no time did anything by act of omission or commission which in the slightest degree indicated an abandonment of his claim or which contributed to the delay in filing this suit.' " 162 F.2d at 1012 n. 4. The same cannot be said of Churma.

Of the other cases Churma cites as establishing the "weight of authority" against charging the veteran with the Government's delay, only Conseglio v. Pennsylvania R. Co., 211 F.Supp. 567 (W.D.N.Y.1962), supports the proposition. The statement in *Conseglio* is only dictum, since the defendants in that case prevailed on the merits, though not on their

defense of laches. We are not persuaded by the dictum.

**19.** We also note that Churma's argument that the statute has not run so as to shift the burden appears to be inconsistent with his conceding that the back pay claim is barred by the statute.

**20.** The only significant factual distinction between this case and *Gruca* is that Gruca first resorted to the Department after the six-year statute had already run. Once we determine that the Department's delay is attributable to Churma, this distinction evaporates. In this regard, we find particularly apt the *Gruca* court's observation that "[o]ne cannot sit back, wait years for someone else to act as his stalking horse, and then ride the coattails of a favorable judicial decision irrespective of the delay involved." 495 F.2d at 1259.

**21.** Churma claims that no support can be found for the finding because "the facts are undisputed." We agree with the Company that this assertion is a non-sequitur. Brief for appellee at 18.