George C. CLYDE

v.

The Honorable Richard THORNBURGH, Governor of the Commonwealth of Pennsylvania,

Walter Baran, Secretary of General Services,

Alvin Aaron, Acting Director for the Bureau of Buildings & Grounds, Department of General Services, Commonwealth of Pennsylvania.

Civ. A. No. 81–1810.

United States District Court, E. D. Pennsylvania.

Feb. 18, 1982.

John M. Gallagher, Jr., Randee B. Pavalow, Media, Pa., for plaintiff.

John O. J. Shellenberger, Deputy Atty. Gen., Eastern Regional Director, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

In this action brought pursuant to 42 U.S.C. § 1983, plaintiff, George C. Clyde, the former Administrative Officer III (Manager) of the Philadelphia Office Build-

ing, contends that he was terminated from employment on account of his political affiliation in violation of his first amendment rights to freedom of political association. See *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). He also asserts that defendants' failure to grant him a hearing prior to his termination from employment violated his fourteenth amendment rights to procedural due process. See *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Named as defendants are The Honorable Richard Thornburgh, Governor of the Commonwealth of Pennsylvania, Walter Baran, Secretary of the Commonwealth's Department of General Services, and Alvin Aaron, who was Acting Director of the Commonwealth's Bureau of Buildings and Grounds at the time plaintiff was terminated.[1] Presently before me is a motion for summary judgment on behalf of all defendants on the grounds that the complaint is barred by the eleventh amendment and by the statute of limitations and/or laches. In addition, defendants contend that plaintiff did not have a cognizable property interest in continued employment and that he has, therefore, failed to state a claim for violation of his rights to procedural due process.

For purposes of the instant motion the facts are relatively simple. In 1976, plaintiff was appointed to the position of Administrative Officer II of the Philadelphia State Office Building by the Democratic administration then in office. He was promoted to Administrative Officer III in November 1977. As Administrative Officer, plaintiff was charged with overseeing the maintenance and custodial work for the State Office Building in Philadelphia. On April 19, 1979, after a change to a Republican administration, Thomas J. Topolski, Deputy Secretary for Administration of the Department of General Services, telephoned plaintiff and informed him that his job was being terminated. The following day, April

1. Aaron served as Acting Director on a temporary basis from March 1, 1979 to July 2, 1979. Both prior to and after that time he filled the position of Assistant Director of the Bureau of Buildings and Grounds. (Aaron Affidavit attached to Defendants' Motion for Summary Judgment at ⌐ 1, Document No. 12).

20, Topolski sent plaintiff a letter confirming that he was terminated from employment effective May 3, 1979. Plaintiff received this letter April 24, 1979. (Plaintiff's Answers to Defendants' Interrogatories, No. 19, Document No. 11.) No reason for the termination was given in this letter other than the fact that the decision to terminate plaintiff was made after "a review of key personnel of the Department" had been conducted. (Defendants' Motion for Summary Judgment, Exhibit B.) On April 26, 1979, plaintiff wrote to Topolski requesting information about the review which allegedly led to his termination. Plaintiff specifically requested information such as who conducted the review and when it took place, what criteria were used, whether his personnel file had been used, etc. (*Id.*) On May 3, 1979, Topolski wrote to plaintiff informing him that he was being terminated because, *inter alia*, complaints had been received concerning the upkeep of the Philadelphia State Office Building. It is undisputed that plaintiff was not given a hearing.

During the next two years plaintiff explored various ways to secure legal redress for his termination.[2] He filed the instant action on May 1, 1981, seeking, *inter alia*, reinstatement, restoration of "full pay and benefits", and "other further legal and equitable relief as may be deemed just under the circumstances." (Complaint ¶ 14).

## I. *Eleventh Amendment*

■ The eleventh amendment, which bars suit against a state in federal court, "partakes of the nature of a jurisdictional bar." *Alabama v. Pugh*, 438 U.S. 781, 782 & n.1, 98 S.Ct. 3057, 3058 & n.1, 57 L.Ed.2d 1114, quoting *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974); *Savage v. Commonwealth*, 475 F.Supp. 524, 528 (E.D.Pa.1979), *aff'd* 620 F.2d 289 (3d Cir. 1980). Accordingly, I will first consider defendants' argument that

the eleventh amendment requires that their motion for summary judgment be granted.

■ Although by its terms the eleventh amendment applies only to the states, it is now well settled that an "action in federal court for damages or back pay against a state official acting in his official capacity is barred because such retrospective relief necessarily depletes the state treasury, *Edelman v. Jordan*, 415 U.S. 651 [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974); but the amendment does not bar a suit seeking declaratory or injunctive relief against the same officials, *Ex parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908)." *Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir. 1981). *Helfrich v. Commonwealth*, 660 F.2d 88, 90 (3d Cir. 1981). In the instant case, therefore, the eleventh amendment does not bar plaintiff's claim for declaratory and injunctive relief, *i.e.*, reinstatement. The amendment does, however, bar plaintiff's claim for back pay, accrued monetary benefits and damages from defendants in their official capacities.[3]

■ Recognizing that the eleventh amendment presents a serious obstacle to his request for monetary relief from defendants in their official capacities, plaintiff now contends, in what appears to be an afterthought, that he is also seeking damages against defendants as individuals. It is well settled that "the eleventh amendment does not bar an action for damages against an official sued in his individual capacity." *Laskaris v. Thornburgh, supra*, 661 F.2d at 26.

■ The complaint does not state whether defendants are being sued in their official or individual capacities. Since plaintiff specifically requested only back pay and reinstatement, it is highly doubtful that he intended to sue defendants in their individual capacities, nevertheless, despite my

---

**2.** Plaintiff's conduct over the more than two years between his termination and the filing of the complaint will be discussed in greater detail in part III(b) of this opinion.

**3.** Plaintiff's argument that his claim for back pay is not barred by the eleventh amendment because it is part and parcel of his claim for reinstatement cannot prevail in light of the Court of Appeals' express rejection of that argument in *Laskaris, see* 661 F.2d at 26.

doubts as to plaintiff's intention at the time he filed his complaint, "I will construe the complaint in his favor and conclude that this action is prosecuted against [defendants] in their individual capacities."[4] *Savage v. Commonwealth, supra,* 475 F.Supp. at 532. *See Laskaris v. Thornburgh, supra,* 661 F.2d at 26–27. Accordingly, insofar as plaintiff seeks damages against defendants as individuals, the complaint is not barred by the eleventh amendment.[5] Defendants' motion for summary judgment on eleventh amendment grounds will be granted only as to plaintiff's claims against them in their official capacities for back pay and damages. The motion will be denied as to the claims for declaratory and injunctive relief, and for money damages from defendants in their individual capacities.

## II. *Procedural Due Process*

[6] Defendants move for summary judgment on plaintiff's claim that they violated his fourteenth amendment rights to procedural due process. They contend that plaintiff did not have a property interest in continued employment cognizable under the due process clause. Whether a public employee has a property interest in continued employment must be determined by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Rosenthal v. Rizzo,* 555 F.2d 390, 392 (3d Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977).

 Plaintiff was appointed to his position as Administrative Officer by the Governor without confirmation of the Senate. Pa.Stat.Ann. tit. 71, § 67.1(a). His position was not covered by the Pennsylvania Civil Service Act, *see* 71 P.S. § 741.1 *et seq.,* and he was, therefore, an at will employee of the Commonwealth. *See, e.g., Scott v. Phil-*

adelphia Parking Authority, 402 Pa. 151, 155, 166 A.2d 278 (1960); *Miller v. Commonwealth of Pennsylvania Department of Transportation,* 38 Pa.Cmwlth. 361, 393 A.2d 53, 54 (1978). In Pennsylvania a public employee has "no contractual entitlement to dismissals only for cause unless the legislature has expressly provided tenure for a given class of employees." *Rosenthal v. Rizzo, supra,* 555 F.2d at 392, citing *Mahoney v. Philadelphia Housing Authority,* 13 Pa.Cmwlth. 243, 320 A.2d 459 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975). Plaintiff points to no legislative enactment granting him tenure, but he argues that a departmental personnel handbook gave him an expectation that he would be dismissed only for cause.

Plaintiff's position is untenable. Under Pennsylvania law it is well settled that, absent authority from the legislature, agencies cannot confer a property interest in continued employment on their employees. *See, e.g., Banks v. Redevelopment Authority,* 416 F.Supp. 72, 73 (E.D.Pa.1976), *aff'd,* 556 F.2d 564 (3d Cir.), *cert. denied,* 434 U.S. 929, 98 S.Ct. 414, 54 L.Ed.2d 288, *reh. denied,* 434 U.S. 1003, 98 S.Ct. 650, 54 L.Ed.2d 500 (1977); *Pagano v. Pennsylvania State Horse Racing Commission,* 50 Pa.Cmwlth. 499, 413 A.2d 44, 45 (1980); *Mahoney v. Philadelphia Housing Authority,* 13 Pa. Cmwlth. 243, 320 A.2d 459, 460 (1974). *Miller v. Commonwealth Department of Transportation,* 38 Pa.Cmwlth. 361, 393 A.2d 53 (1978), cited by plaintiff, is not to the contrary. In that case the Department of Transportation agreed that a hearing was required for disciplinary actions taken for just cause but denied that the demotion of the plaintiff was a just cause disciplinary action. The Commonwealth Court refused to accept PennDot's characterization and remanded the matter to PennDot to deter-

---

4. Defendants have apparently interpreted the complaint as claiming against them as individuals, since they pleaded good faith official immunity as a defense to plaintiff's claim for damages. (Answer, Document No. 9 at p. 4).

5. I hold only that plaintiff's complaint for damages against defendants in their individual capacities is not barred by the eleventh amend-

ment. Defendants have not raised the issue and I express no opinion as to whether the complaint states a claim against all of the defendants for violation of his civil rights, in light of the fact that supervisory personnel cannot be held liable on the basis of respondeat superior. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

mine the reason for the demotion. The court did not, however, address the question whether agency regulations or policies can give rise to a constitutionally protected property interest under state law absent legislative authority, a question it expressly answered in the negative in *Mahoney v. Philadelphia Housing Authority, supra.* The Commonwealth Court has recently cited *Mahoney* with approval in *Pagano v. Pennsylvania State Horse Racing Commission, supra,* a 1980 case in which the court rejected plaintiff's claim of a property interest in continued employment based on an executive order. Accordingly, I do not view *Miller* as being contrary to well settled Pennsylvania law in this regard, and it does not compel the finding of a property interest in this case.

I have reviewed the legislative grant of powers to the Department of General Services, Pa.Stat.Ann. tit. 71, § 631.1, and there is nothing in that provision which grants the department the authority to give tenure to its appointed employees. I conclude, therefore, that plaintiff had no entitlement to continued employment and that defendants are entitled to summary judgment on his claim that they violated his rights to procedural due process.

### III. *Statutes of Limitations/Laches*

Defendants also seek summary judgment on the ground that plaintiff's complaint is untimely. Before addressing the merits of defendants' motion, I must first consider their argument that, because plaintiff seeks both legal and equitable relief, the timeliness of his complaint must be determined solely by reference to the appropriate statute of limitations, and that the equitable doctrine of laches does not apply.

In *Gruca v. United States Steel Corporation,* 495 F.2d 1252 (3d Cir. 1974), the court held that where plaintiff makes claims for legal and for equitable relief, and where the grant of equitable relief is necessary to make plaintiff whole, the statute of limitations applies to the legal claims and laches applies to the equitable claims.[6] *Id.* at 1256. *See Churma v. United States Steel Corporation,* 514 F.2d 589 (3d Cir. 1975). The instant case falls squarely within this principle since plaintiff cannot be reinstated to his position, an essential element of the relief he seeks, without an equitable decree. Although I note that the approach taken by the *Gruca* court has been criticized, *see Saffron v. Department of the Navy,* 561 F.2d 938, 943 & n.40 (D.C.Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780, and that other courts have applied only the statute of limitations to claims seeking both legal and equitable relief, *see, e.g., id.; Swan v. Board of Higher Education,* 319 F.2d 56, 59–60 (2d Cir. 1963), I am bound by *Gruca.*[7] *See Morgan v. Sharon Pennsylvania Board of Education,* 472 F.Supp. 1157 (W.D.Pa.1979) (applying laches and statute of limitations in § 1983 action seeking legal and equitable relief). Accordingly, the timeliness of plaintiff's claims for damages against defendants in their individual capacities will be determined by applying the statute of limitations, and his claims against defendants in their official capacities for equitable relief will be considered under the doctrine of laches.

### (a) *Statute of Limitations*

Because 42 U.S.C. § 1983 "contains no statute of limitations, the limitation to

---

**6.** The fact that *Gruca* was brought under the Military Service Act of 1967, 50 App. U.S.C. § 459 and not § 1983 does not, in my view, create a viable distinction. The court's conclusion in *Gruca* that laches applies to the equitable claims and the statute of limitations to the legal claims was not premised on the particular federal statute involved but rather was based on the belief that, absent the exercise of equitable power, plaintiff could not be made whole.

**7.** I disagree with defendants' argument that *Gruca* was overruled *sub silentio* by the panel

opinion in *Skehan v. Board of Trustees,* 590 F.2d 470 (3d Cir. 1978). First, although the court applied the statute of limitations to a § 1983 claim seeking legal and equitable relief for discharge from employment in violation of first amendment rights, the court did not address the applicability of laches to the claim. Further, and more important, under the Third Circuit Court of Appeals internal operating procedures, no panel may overrule a published opinion of a previous panel. Accordingly, *Gruca* must be followed.

be applied is that which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law." *Polite v. Diehl*, 507 F.2d 119, 122 (3d Cir. 1974) (en banc); *Board of Regents v. Tomanio*, 446 U.S. 478, 483–84, 100 S.Ct. 1790, 1794–95, 64 L.Ed.2d 440 (1980); *Skehan v. Board of Trustees*, 590 F.2d 470, 476 (3d Cir. 1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979).

Until recently the issue of which statute of limitations applied to claims of unconstitutional discharge was well settled in this circuit. In *Skehan v. Board of Trustees*, *supra*, the Court of Appeals held that a claim seeking relief for a discharge from employment in violation of the employee's first amendment rights was best analogized to an action for wrongful interference with economic relations and that the six year period contained in 12 P.S. § 31 for, *inter alia*, contract or trespass actions, controlled. 590 F.2d at 477. *See also Davis v. United States Steel Supply*, 581 F.2d 335, 337 (3d Cir. 1978) (discriminatory discharge in violation of 42 U.S.C. § 1981). *Skehan*, however, was handed down in 1978 and was decided under Pennsylvania's old limitations scheme under which all actions for damages for personal injuries were subject to a two year limitations period, 12 P.S. § 34, and virtually all other claims (with exceptions not pertinent herein) were subject to the six year period contained in 12 P.S. § 31. *See Davis v. United States Steel Supply*, 581 F.2d at 337.

In 1978, as part of its enactment of a Judicial Code, Pennsylvania repealed the old limitations scheme and completely revised its statutes of limitation. Defendants contend that under the new limitations scheme, the instant case is governed by the six month period contained in 42 Pa.Cons. Stat.Ann. § 5522(b)(1), which provides:

(b) Commencement of action required— The following actions and proceedings must be commenced within six months:

(1) An action against any officer of any government unit for anything done in the execution of his office, except an action subject to another limitation specified in this subchapter.

*Id.* Plaintiff, on the other hand, contends that the statute of limitations applicable to his claim is the six year period for

Any civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application by a period of limitation by section 5531 (relating to no limitation).

42 Pa.Cons.Stat.Ann. § 5527(6).

As is evident from the terms of both statutory provisions set forth above, they are residuary provisions which will control only if no other provision of the Pennsylvania limitations scheme applies. 8 Pa.Bulletin, 1456, 1457 (May 27, 1978). *See, e.g., Biggans v. Bache Halsey Stuart Shields, Inc.*, 638 F.2d 605, 607 n.2 (3d Cir. 1980) (§ 5527 is a catch-all provision); *Hassell v. City of Philadelphia*, 507 F.Supp. 814, 817 n.3 (E.D.Pa.1981) (§ 5522(b)(1) applies "unless the officer's conduct falls within another specific limitation").

Plaintiff's claim that he was wrongfully discharged in violation of his first amendment rights is, as earlier stated, best analogized to " 'those torts which involve the wrongful interference with another's *economic* rights or interests.' " *Skehan v. Board of Trustees, supra*, 590 F.2d at 477, quoting *Davis v. United States Steel Supply*, 581 F.2d 335, 339 (3d Cir. 1978). More specifically, a claim based on an unconstitutional discharge is most akin to the tort cause of action for wrongful discharge of at will employees which was recently accorded limited recognition by the Pennsylvania courts. *See Davis v. United States Steel Supply, supra*, 581 F.2d at 341 & n.7.[8] *See generally Boresen v. Rohm & Haas*, 526 F.Supp. 1230, 1231, 1232 (E.D.Pa.1981);

**8.** My analogizing plaintiff's claim to one for wrongful discharge for purposes of identifying the proper statute of limitations under § 1983 should not be construed as implying that the Pennsylvania courts would recognize a cause of action for wrongful discharge by a private employer based on the facts alleged in the instant case. *See Davis v. United States Steel Supply, supra*, 581 F.2d at 341 n.7.

*Geary v. United States Steel Corporation*, 456 Pa. 171, 319 A.2d 174 (1974); *Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611 (1980). Review of the Pennsylvania limitations scheme fails to reveal any specific period applicable to claims for the specific tort of wrongful discharge or the more generalized species of tort for interference with contractual or economic relations. *See Riccobono v. Whitpain Township*, 497 F.Supp. 1364, 1375 (E.D.Pa.1980). Further, those cases which have considered such torts have looked to the residuary statutes for the applicable period. *See, e.g., Riddick v. Cuyler*, slip op. No. 81–246 (E.D.Pa. July 16, 1981) (§ 1983 action for unconstitutional discharge); *Culbreth v. Simone*, 511 F.Supp. 906, 916 (E.D.Pa.1981) (diversity action for fraud and tortious interference with business relationships); *Riccobono v. Whitpain Township, supra*, 497 F.Supp. at 1374–75 (§ 1983 action analogized to "malicious interference with a prospective contractual relation"). *See also Biggans v. Bache Halsey Stuart Shields*, 638 F.2d 605 n.2 (3d Cir. 1980) (in a securities case, the court declined to decide if six year catch-all provision applied to actions sounding in common law fraud). *But see Bickell v. Stein*, 435 A.2d 610, 612 (Pa.Super.Ct. 1981) (court applied two year statute of limitations contained in 42 Pa.Cons.Stat. Ann. § 5524(3)(4) to claims based on fraudulent and intentional interference with contractual relations.[9]

■■■ In deciding which of the two residuary periods contained in Pennsylvania's judicial code is applicable to the instant case, I am persuaded by defendants' argument that the six month limitation provided in 42 Pa.Cons.Stat. § 5522(b)(1) applies. Plaintiff's claim seeking relief from public officials for their unconstitutional actions in discharging him from public employment is clearly "an action against any officer of any government unit for anything done in the execution of his office" which, as determined above, is not subject to another specific period. The clear language of § 5522(b)(1) compels the conclusion that if plaintiff brought his action in state court, it would be subject to the six month period. *See, e.g., Eshmont v. Commonwealth of Pennsylvania Department of Transportation*, slip op. No. 1390, C.D.1981 (Commonwealth Ct., Nov. 24, 1981) (dictum). Accordingly, it must be applied in the instant case. *See Peterson v. Fink*, 515 F.2d 815, 816 (8th Cir. 1975).

In reaching my conclusion that § 5522(b)(1) applies to the instant case, I respectfully disagree with the conclusion reached by the only other judge of this court who has squarely decided this issue.[10] In *Riddick v. Cuyler, supra*, the court concluded that § 5522(b)(1) applied only to actions for injuries to persons and property, and held that the residual period applicable to a § 1983 claim of unconstitutional dis-

---

**9.** None of the parties has expressly suggested that 42 Pa.Cons.Stat.Ann. § 5524(3) or (4) applies in this case. These sections provide for a two year limitation in

 (3) An action for taking, detaining or injuring personal property, including actions for specific recovery thereof,

 (4) An action for waste or trespass of real property.

Although these provisions were applied by the Pennsylvania Superior Court in *Bickell*, a case in which plaintiff sued for fraud and interference with contractual relations, I do not view that case as being dispositive of the issue before me. The question of what limitations period should apply was not in dispute in *Bickell* and the sole question before the court was whether the apparently agreed upon statute was tolled. Further, application of § 5524(3) or (4) to *Bickell* was understandable as that case involved misrepresentations concerning

the structural soundness of a building plaintiff purchased, a situation quite distinguishable from that in the instant case.

 In my view the provisions of § 5524(3) or (4) are not applicable to the instant case. Plaintiff's claim for unconstitutional discharge cannot realistically be viewed as either "an action for taking, detaining or injuring personal property" or "an action for waste or trespass of real property."

**10.** Although § 5527(6) was applied to a § 1983 action analogized to an action for malicious interference with prospective contractual relations in *Riccobono v. Whitpain Township, supra*, 497 F.Supp. at 1374, the court did not consider the possible applicability of § 5522(b)(1) to the case. Accordingly, *Riccobono* provides little guidance in the instant case.

charge was that contained in § 5527(6). The court reasoned that since § 5522(b)(1) immediately followed § 5522(a), which precludes suit against the Commonwealth or any governmental unit for damages "on account of any injury to his person or property" unless the person injured gave notice within six months of his injury, § 5522(b)(1) applies only to similar claims. In my view any relationship between § 5522(a) and § 5522(b)(1) is speculative at best. Unlike § 5522(b)(1), § 5522(a) does not set forth a statute of limitations but rather sets forth conditions precedent, in the form of notice, to bringing suit against governmental bodies. Further, § 5522(a)(1) by its terms applies solely to actions against governmental entities, whereas § 5522(b)(1) applies to actions against governmental officials for acts done in the performance of their office. Section 5522(b)(1) does not make the distinction made in § 5522(a)(1). Indeed, § 5522(b)(1) expressly applies to "an action." Had the Pennsylvania legislature intended to limit § 5522(b)(1) to actions for injuries to persons or property, it could have easily done so as it did in § 5522(a)(1).[11] Finally, I believe that an

11. I also respectfully disagree with the *Riddick* court's reliance on a source note following § 5522 which provided that "this Act is intended to specifically respond to and prescribe limitations on the decision of *Mayle v. Commonwealth*, [479 Pa. 384, 388 A.2d 709 (1978)]." In *Riddick*, Judge Newcomer reasoned that since *Mayle* was a personal injury action § 5522(b)(1) was intended to only apply to such actions. My review of the available history leads me to conclude that § 5522(b)(1) was not a response to *Mayle* and, in fact, was a part of the law of Pennsylvania prior to legislative reenactments of both local governmental and sovereign immunity.

Section 5522 was enacted as part of the Judiciary Act of 1976, Act of July 6, 1976, P.L. 586, No. 142 (hereinafter Judiciary Act). As already discussed, § 5522(a) sets forth the notice provisions for suits against governmental entities, and § 5522(b) provided for a residuary six month limitation for actions against public officials. Although enacted in July 1976, the Judiciary Act did not go into effect until June 27, 1978.

In November 1978, amid growing concerns about the effect of the Pennsylvania Supreme Court's abrogation of local governmental immunity in *Ayala v. Philadelphia Board of Education*, 453 Pa. 584, 305 A.2d 877 (1973), the legislature enacted the Political Subdivision Tort Claims Act of 1978, Act of November 26, 1978, P.L. 1399, No. 330 (hereinafter Act No. 330). *See generally* Comment, The Political Subdivision Tort Claims Act: Pennsylvania's Response to the Problems of Municipal Tort Liability, 84 Dick.L.Rev. 717 (1980). As part of that Act, the legislature provided for a qualified official immunity for its officers. Additionally, the legislature repealed § 5522 to the extent that it was inconsistent with the Political Subdivision Tort Claims Act. *See* Act No. 330, § 802(b). Although the legislature did not specify what it intended by the limited repeal of § 5522, a reasonable interpretation is that the legislature did not want the notice provisions of § 5522(a) or the residuary limitation provision of § 5522(b) to be construed as authorizing suits beyond those authorized by Act No. 330 itself. Act No. 330, therefore, did not change the residuary nature of § 5522(b)(1) as it was enacted by the Judiciary Act of 1976.

On July 14, 1978, after the effective date of § 5522, the Pennsylvania Supreme Court abrogated sovereign immunity in *Mayle*. In an almost immediate response, the legislature reenacted sovereign immunity with limited exceptions. Act of September 28, 1978, P.L. 788, No. 152 (hereinafter Act No. 152), Pa.Stat.Ann. tit. 53–5311.101, *et seq.* (repealed). In so doing, the legislature amended § 5522(a) to reflect the fact that suits could now be brought against the Commonwealth and its agencies, suits which could not be brought when § 5522(a) was first enacted in 1976. Act No. 152 made absolutely no mention of § 5522(b)(1). In Section 5 of Act No. 152, the construction section of the Act, the legislature stated that Act No. 152 was a response to *Mayle*. This is the language in the source note relied on in *Riddick* to conclude § 5522(b)(1) was a response to *Mayle*. However as seen, Act No. 152 had absolutely no effect of § 5522(b)(1) and that provision, except to the extent modified by Act No. 330, remained as it was enacted in the Judiciary Act.

In 1980 the legislature continued its codification of laws pertaining to the judiciary and civil procedure and enacted the Judiciary Act Repealer Act Continuation Act of 1980, Act of October 5, 1980, P.L. 693, No. 142 (hereinafter JARA). In JARA, the legislature repealed the Political Subdivision Tort Claims Act [Act No. 330] which had been codified at Pa.Stat.Ann. tit. 53, § 5311.101 *et seq.* (repealed), and in § 221 of JARA reenacted that Act at 42 Pa. Cons.Stat. 8541 *et seq.* The legislature also reenacted § 5522 as part of JARA. Section 5522(a) was amended but § 5522(b)(1) was reenacted as it was passed in the original Judiciary Act of 1976. In § 221(b)(2) of JARA, the legislature stated that its intent in reenacting § 5522(b)(1) was to restore that provision to the status it had prior to its limited repeal by § 802(b) of the Political Subdivision Tort Claim

interpretation of § 5522(b)(1) as applying only to actions for injuries to persons or property would render that provision superfluous. As I noted in *Hassell*, and as is made clear by the explanatory notes to the Judiciary Act of 1976 and the Judiciary Act Repealer Act of 1978, 8 Pa.Bulletin at 1457, § 5522(b)(1) does not apply to actions against an officer for personal injury or any other conduct which is covered by a specific limitations provision. A review of Pennsylvania's limitations scheme reveals that injuries to persons or property are expressly covered under other provisions. *See, e.g.*, 42 Pa.Cons.Stat.Ann. § 5524. Accordingly, I disagree that § 5522(b)(1) is limited to actions for injuries to persons and property. In my view § 5522(b)(1) represents the legislature's considered judgment that actions against public officials which are so uncommon that they do not fall within the other specific limitations periods, should be brought within six months.

Applying the six month period in the instant case, plaintiff's claim for legal relief from defendants in their individual capacities is untimely. As a matter of federal law, plaintiff's cause of action for his allegedly unconstitutional discharge accrued on April 24, 1979, when he received the letter informing him that he was to be terminated effective May 3, 1979. *Chardon v. Fernandez*, —— U.S. ——, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam). *See Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Accordingly, his complaint for legal relief from the defendants in their individual capacities, filed more than two years later on May 1, 1979, is time-barred and will be dismissed.[12]

### (b) *Laches*

■■■ As above noted, I will consider the timeliness of plaintiff's claims for equi-

table relief against defendants in their official capacities by applying the doctrine of laches. "Laches consists of two elements, inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay." *Gruca v. United States Steel Corp., supra*, 495 F.2d at 1258; *Sworob v. Harris*, 451 F.Supp. 96, 101 (E.D.Pa.1978), aff'd 578 F.2d 1376 (3d Cir.), *cert. denied*, 439 U.S. 1089, 99 S.Ct. 871, 59 L.Ed.2d 55 (1979). Application of the doctrine is committed to the sound discretion of the court, which is to be exercised within the limits stated above. *Churma v. United States Steel Corporation, supra*, 514 F.2d at 593. Although the existence of inexcusable delay and prejudice are basically factual inquiries (*see, e.g., id., Morgan v. Sharon Pennsylvania Board of Education*, 472 F.Supp. 1157 (W.D.Pa.1979)), the determination of whether laches bars a claim can be made on a motion for summary judgment so long as no material issue of fact exists. *See, e.g., GAF Corporation v. Amchem Products, Inc.*, 570 F.2d 457 (3d Cir. 1978); *Gruca v. United States Steel Corp., supra*; 6 Moore's Federal Practice ¶ 56.17[38] at 56–918 [2d ed. 1980].

■■■ The statute of limitations provides the starting point for any discussion of laches. Where, as here, plaintiff has filed his claim beyond the period applicable to legal claims, the existence of inexcusable delay and prejudice to defendant are presumed, and the burden shifts to plaintiff to " 'come forward and prove that his delay was excusable and that it did not . . . prejudice the defendant.' " *Gruca v. United States Steel Corporation, supra*, 495 F.2d at 1259, quoting *Burke v. Gateway Clipper*, 441 F.2d 946, 949 (1971). *See Churma v. United States Steel Corporation, supra*, 514 F.2d at 593.

■■■ Plaintiff contends that his claim is not barred by laches because, from the

Act (Act No. 130). In other words, the legislature intended to restore § 5522(b)(1) to its status under the Judiciary Act, as the residuary statute of limitations for actions against public officers. In my view, therefore, the legislative history of § 5522(b)(1) clearly establishes that the legislature did not enact that provision as a response to *Mayle*, and I, therefore, cannot agree that the provision was intended to be

limited to actions for injuries to persons or property.

12. In light of the accrual date of the cause of action, April 24, 1979, even if the two year period of § 5524(3) could be stretched to apply to the instant case, plaintiff's claim for legal relief would still be untimely.

time he was notified of his termination, he diligently pursued his rights. (Plaintiff's Brief in Support of Denial of Motion for Summary Judgment, at 7). Review of plaintiff's affidavit, the truth of which I must accept, reveals that plaintiff did a number of things in an attempt to·obtain redress for his termination. Among the steps he took were, he requested that Topolski give him a hearing (Clyde Affidavit ¶ 14); he contacted others in the General Services Department who had also been terminated (id. ¶ 17); he sought advice of counsel who wrote Governor Thornburgh on plaintiff's behalf (id. ¶ 19); and he contacted leading figures in the Democratic Party seeking their assistance in his attempt to be reinstated (id. ¶¶ 19–22). But the fact that plaintiff wanted to pursue his rights and took steps to do so does not excuse his delay in bringing this action. As Judge Aldisert wrote in Gruca, "the promptness which is demanded is not a naked assertion of a claim but the commencement of an action by the filing of a complaint." 495 F.2d 1252. Plaintiff apparently contends that his failure to file a complaint was caused by the fact that an attorney told him that "it would cost thousands of dollars to pursue [his] case in the courts" [Clyde Affidavit ¶ 2] and that he was unable to obtain the funds despite repeated efforts to do so (id. ¶¶ 22–23). If plaintiff is arguing that he lacked sufficient funds to file this action, I find his argument unpersuasive. "A plaintiff cannot justify his lack of diligence in prosecuting litigation simply by declaring that he is poor." Organizations United for Ecology v. Bell, 446 F.Supp. 535, 548 (M.D. Pa.1978). Further, I take notice that the costs of filing a lawsuit are not great and the undisputed facts in the record clearly establish that plaintiff had sufficient funds to start suit within the limitations period. Plaintiff received his salary from the Commonwealth through his termination on May 3, 1979. Beginning in May 1979, until December 1979, plaintiff received $4,560 in unemployment benefits. (Plaintiff's Answers to Interrogatories, Document Nos. 11,

39 & 40). After his termination, plaintiff received $2,039.03, representing return of his retirement benefits, and on May 31, 1979 he received $1,709.83 representing unused leave time. (Id. Nos. 42 & 43). In December 1979 plaintiff secured new employment at a salary of $19,800 per year, which was more than he earned from the Commonwealth. Accordingly, if plaintiff is claiming indigency as an excuse for his delay, his plea is unavailing.[13]

Because plaintiff clearly had sufficient funds to file this action, I do not believe that he is claiming indigency as an excuse. Instead, I believe that plaintiff is contending that he failed to timely file suit because his first attorney told him that prosecuting this lawsuit would cost thousands of dollars, and that plaintiff spent his time attempting to obtain assistance for financing the litigation. In light of the fact that plaintiff's counsel would be compensated if he were successful under the Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988, plaintiff's argument is not convincing. Nor am I persuaded by plaintiff's argument that because he believed that the state Democratic Committee would fund his lawsuit he is somehow excused for his lack of diligence. Reliance on bad advice, including vague offers of support, do not justify delay in filing suit. See George v. Hillman Transportation Company, 340 F.Supp. 296, 301 (W.D.Pa. 1972). Cf. Mroz v. Dravo Corporation, 429 F.2d 1156, 1160 (3d Cir. 1970). This is especially true, where, as here, the Civil Rights Attorney's Fees Act made it unnecessary for plaintiff to expend large sums of money to proceed with this action. Accordingly, I conclude that on the undisputed facts in this record, plaintiff has failed to establish that a material issue of fact exists, the proof of which would provide a legally sufficient excuse for plaintiff's delay in filing this action until more than a year and a half after the statute of limitations had run.

Turning to the second element of laches, plaintiff has failed to show that there is a material issue of fact as to whether defend-

---

**13.** Even if plaintiff was indigent that would not excuse his delay in filing his complaint since he could have petitioned the court to proceed in forma pauperis. See 28 U.S.C. § 1915.

ants were prejudiced by his inexcusable delay. Defendants are entitled to a presumption of prejudice because plaintiff filed this action after the expiration of the applicable limitation period (*Gruca, supra* at 1260). Beyond that presumption, defendants contend that they have been prejudiced by the fact that plaintiff's replacement has been hired (*see* Topolski Affidavit at ¶ 4), and that reinstatement of plaintiff would require defendants to either fire the replacement or carry two administrators. Further, pointing to the undisputed affidavit of Alvin J. Aaron, which states that reports of plaintiff's work performance cannot be found and have most likely been destroyed as a matter of course, defendants argue that they have been prejudiced by the loss of evidence. Plaintiff has not offered any countervailing affidavit contradicting defendants' assertion of prejudice. He argues only that these reasons are insufficient as a matter of law to establish prejudice. Plaintiff's argument fails if only for the reason that prejudice is presumed and that plaintiff has not set forth any facts to overcome that presumption. It would be an abuse of discretion to find that plaintiff has created a material issue of fact sufficient to overcome the presumption of prejudice where he has not set forth any factual support for his claim of lack of prejudice. *Gruca, supra*, 495 F.2d at 1260. In addition to the presumption, however, defendants have set forth facts which do establish prejudice. First, if plaintiff is reinstated it would cause personnel disruptions, *see id.* at 1261 and, second, the loss of plaintiff's job evaluations, through matter of course destruction of records, may hinder defendants' ability to defend plaintiff's claim. *See Baczor v. Atlantic Richfield Co.*, 424 F.Supp. 1370, 1380 (E.D.Pa.1976). This factor is particularly relevant in the instant case, where defendants contend that plaintiff was terminated because of his poor management of the Philadelphia State Office Building. Accordingly, I conclude that plaintiff has failed to establish the existence of a material issue of fact, the proof of which would

entitle him to overcome the presumption of prejudice and inexcusable delay in this case. Therefore, defendants' motion for summary judgment will be granted and plaintiff's claim for equitable relief will be also dismissed on the ground of laches.[14]

### ORDER

This 18th day of February, 1982, it is

ORDERED that defendants' Motion for Summary Judgment is GRANTED on the grounds that

1. Plaintiff's claim against defendants in their official capacities for backpay and damages is barred by the Eleventh Amendment;

2. Plaintiff has failed to state a claim for violation of his procedural due process rights;

3. Plaintiff's claim against defendants in their official capacities is barred by the statute of limitations; and

4. Plaintiff's claim against defendants in their official capacities for equitable relief is barred by laches.

---

**14.** Although I have granted defendants' motion for summary judgment on plaintiff's procedural due process claim, the foregoing discussion on

the statute of limitations and laches is equally applicable to that claim as well.