

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-1999

# US Fire Ins Co v. Asbestospray Inc

Precedential or Non-Precedential:

Docket 98-1153,98-1154,98-1854

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"US Fire Ins Co v. Asbestospray Inc" (1999). *1999 Decisions.* Paper 178.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/178

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 29, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-1153, 98-1154 and 98-1854

UNITED STATES FIRE INSURANCE COMPANY and
THE NORTH RIVER INSURANCE COMPANY,

  Appellants in No. 98-1854,

v.

ASBESTOSPRAY, INC.; SPRAYCRAFT, INC.;
ASBESTOS PRODUCTS MANUFACTURING
CORPORATION; H&A CONSTRUCTION CO., INC.;
GROVER C. ADAMS; JOSEPH H. ALBERT; GEORGE
AMENT; HARVEY J. BEECOFT; HERBERT OBERRY BEST;
EUGENE BOROFSKY; MAYOR AND CITY COUNCIL OF
BALTIMORE; AMCHEM PRODUCTS, INC.; AMERICAN
HOME PRODUCTS CORPORATION; ANCHOR PACKING
CO.; A.P. GREEN INDUSTRIES, INC.; ARMSTRONG
WORLD INDUSTRIES; CONTAINTEED CORP.; DANA
CORPORATION; FIBREBOARD CORPORATION; KEENE
CORP.; NATIONAL GYPSUM COMPANY; STICH, ANGELL,
KREIDLER, BROWNSON & BALLOU, P.A.; WILSON,
ELSER, MOSKOWITZ, EDELMAN & DICKER; WILENTZ,
GOLDMAN & SPITZER,

v.

ENVISION CLAIMS MANAGEMENT CORPORATION;
JOHN DOE 1-10, INDIVIDUALLY; JANE DOE 1-10,
INDIVIDUALLY; XYZ CORP., 1-10, BODIES CORPORATE,

  Third-Party Defendants

Stich, Angell, Kriedler, Brownson & Ballou, P.A.,

  Appellant in No. 98-1153

The Estate of Frederick Whitaker and Weitz and
Luxenberg, P.C.,

        Appellants in No. 98–1154

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(Civ. No. 97–4020)
District Judge: The Honorable Charles R. Weiner

Argued: April 7, 1999

Before: SLOVITER and ALITO, Circuit Judges,
and ALARCON, Senior Circuit Judge*

(Opinion Filed: June 29, 1999)

        DUGAN, BRINKMANN, MAGINNIS
         AND PACE
        EUGENE J. MAGINNIS, JR.,
          (ARGUED)
        1880 John F. Kennedy Boulevard
        Suite 1400
        Philadelphia, PA 19103

        Counsel for Appellant, Stich, Angell,
        Kreidler, Brownson & Ballou, P.A. in
        No. 98–1153

        WEITZ & LUXENBERG, P.C.
        JOHN J. PREEFER
        180 Maiden Lane
        New York, NY 10038

        Counsel for Appellants, Frederick W.
        Whitaker and Weitz & Luxenberg,
        P.C. in No. 98–1154
_____

*The Honorable Arthur L. Alarcon, United States Senior Circuit Judge for
the Court of Appeals for the Ninth Circuit, sitting by designation.

KLETT LIEBER ROONEY &
 SCHORLING
JAMES LEWIS GRIFFITH
Two Logan Square, Twelfth Floor
Philadelphia, PA 19103

WOLF, BLOCK, SCHORR &
 SOLIS-COHEN LLP
WILLIAM G. FREY (ARGUED)
VIRGINIA LYNN HOGBEN
12th Floor Packard Building
111 South 15th Street
Philadelphia, PA 19102

Attorneys for United States Fire
Insurance Company and The North
River Insurance Company, Appellees
in Nos. 98-1153 and 98-1154, and
Appellants in No. 98-1854

COOPER & TUERK, LLP
CARL E. TUERK, JR. (ARGUED)
201 North Charles Street,
 Suite 2300
Baltimore, MD 21201

LEVY PHILLIPS & KONIGSBERG,
 LLP
STANLEY J. LEVY
520 Madison Avenue, 4th Floor
New York, NY 10022

Attorneys for Mayor & City Council
of Baltimore, Appellees

GREITZER AND LOCKS
GENE LOCKS
MARTIN GREITZER
JONATHAN W. MILLER (ARGUED)
1500 Walnut Street, 20th Floor
Philadelphia, PA 19102

Attorneys for Eugene Borofsky,
Appellee

3

OPINION OF THE COURT

ALITO, Circuit Judge:

Before us are two consolidated appeals. In the first, Stich, Angell, Kreidler, Brownson and Ballou, P.A. ("Stich, Angell"), Frederick Whitaker ("Whitaker") and Weitz & Luxenberg, P.C. ("Weitz & Luxenberg") appeal the District Court's January 21, 1998 order, which declared a distribution of funds held by the Stich, Angellfirm in escrow for the United States Fire Insurance Company ("U.S. Fire") and The North River Insurance Company ("North River") (collectively, the "Insurers") to be in violation of an earlier injunction. We dismiss this appeal for lack of jurisdiction.

In the second appeal, the Insurers challenge the District Court's August 28, 1998 Order dismissing their statutory interpleader action for laches and for lack of jurisdiction. The Insurers also contest the District Court's ruling that the Insurers waived certain attorney-based privileges. We hold that the District Court possessed jurisdiction over the interpleader action, and therefore reverse the District Court's dismissal for lack of jurisdiction. With respect to the laches defense, we hold that the District Court erred in calculating the length of the Insurers' delay infiling the interpleader action and that the Court improperly failed to provide the Insurers with an opportunity to present evidence regarding the reasons for the delay. We therefore vacate the District Court's dismissal based on laches and remand for further proceedings. Finally, we conclude that the Insurers did not waive their attorney-based privileges and we therefore reverse the District Court's contrary ruling.

I.

A.

U.S. Fire and North River are excess insurers of Asbestospray Corporation and related entities (collectively,

4

"Asbestospray"), all of which now are bankrupt. Asbestospray is a defendant in over 27,000 personal injury suits pending in courts throughout the country. In addition to the contingent liabilities posed by these 27,000 suits, the Mayor and City Council of Baltimore ("Baltimore") have obtained an $8.33 million judgment against Asbestospray for reimbursement of costs incurred in removing asbestos from public buildings in the City of Baltimore. Asbestospray's sole remaining asset is the proceeds of the insurance policies at issue here.

These insurance policies provided excess coverage of $5 million per year from 1971 to 1976 for a total of $25 million in coverage. Because the policies are excess policies, the coverage under them is triggered only if and when the primary layer of coverage is exhausted. The primary layer of coverage was exhausted in May 1995, at which point the Insurers became obligated to defend Asbestospray in asbestos-related lawsuits. The policies expressly provide that defense litigation costs, including counsel fees, apply against the policy limits.

Between May 1995 and June 13, 1997, the Insurers disbursed over $21 million of the $25 million of the aggregate coverage. The sum of $6.5 million was paid to settle personal injury claims, while the sum of $9.2 million was paid in legal defense costs. Settlements in principle, agreed to but not paid as of June 13, 1997, totaled $5.39 million. The Insurers deposited this $5.39 million sum in an escrow account administered by Asbestospray's national coordinating defense counsel, Robert Brownson, Esq. ("Brownson"), and his law firm, Stich, Angell. Deducting from the aggregate coverage of $25 million the sums expended for settlements in fact and in principle, as well as accumulated defense costs, $3.88 million in unexhausted coverage remained as of June 13, 1997 to satisfy both the pending personal injury claims and Baltimore's judgment against Asbestospray.

B.

In 1984, Baltimore filed suit in Maryland state court against Asbestospray (and more than 40 other asbestos

manufacturers), seeking to recover costs incurred in removing asbestos from City-owned buildings. In 1992, a jury returned a verdict in Baltimore's favor, and ultimately the Maryland Court entered judgment against Asbestospray for $8.33 million in compensatory damages. This award was upheld on direct appeal, and in 1993, Baltimore served writs of garnishment against the Insurers seeking recovery against the policies at issue here. The writs directed the Insurers as garnishees to "hold the property of .. . [Asbestospray] subject to further proceedings in this Court." The Insurers answered the writs and, among other things, denied coverage for asbestos remediation claims of the type upon which Baltimore's judgment was based.

In 1994, the Insurers moved the Maryland Court for summary judgment on the ground that the policies do not provide coverage for asbestos remediation claims. Instead of ruling on the coverage issue, the Maryland Court entered a default judgment against the Insurers as a sanction for alleged discovery violations. The Insurers appealed, and in August 1996, the Maryland Court of Appeals vacated the default judgment and remanded the case to the trial court. North River Ins. Co. v. Mayor & City Council of Baltimore, 343 Md. 34, 680 A.2d 480 (Md. 1996). The Maryland Court subsequently denied the Insurers' motion for summary judgment with respect to coverage.

From August 1996 to June 1997, the date this interpleader action was filed, the Maryland garnishment action was not actively litigated. In September 1998, Baltimore moved the Maryland Court to enjoin plaintiffs from paying their settlements in principle from the escrow account. Pursuant to this motion, the Maryland Court has ordered the Insurers not to pay any further proceeds from the escrow fund to any Asbestospray claimant pending resolution of Baltimore's claim in the Maryland Court.

C.

The Insurers commenced this statutory interpleader on June 13, 1997, and in accordance with 28 U.S.C. S 1335(a)(2) (1994), they filed an interpleader bond of $3.88 million, an amount which represented the proceeds of the

6

policies that either had not been paid out or that had not been committed by way of settlements in principle. On June 13, 1997, the District Court entered an order (hereafter, the "June 13 Order") pursuant to 28 U.S.C. S 2361 (1994):

> restraining for a period of 20 days from the date hereof (or until further order of this Court) all claimants from instituting an action or further prosecuting any existing action in any state court or in any Court of the United States or in any other tribunal against the United States Fire Insurance Company and North River Insurance Company (the "Plaintiffs") seeking recovery under policies issued by Plaintiffs to [Asbestospray].

By order dated August 1, 1997, the District Court continued the injunction indefinitely.

On July 25, 1997, Baltimore filed an answer and opposition to the interpleader on the grounds that: (1) the amount of the interpleader bond was insufficient to confer jurisdiction; (2) the action was equitably barred by laches; (3) the action was barred by the doctrine of unclean hands; and (4) the interpleader was brought to avoid litigation of the garnishment action in the Maryland Court. The District Court scheduled a hearing for July 30, 1997, at which the District Court heard argument on whether it had jurisdiction and whether the action was barred by laches. The District Court did not rule on any of these matters but accepted briefing and continued its injunction.

D.

On July 18, 1997, Weitz & Luxenberg filed a motion in New York State court on behalf of one of its clients, Frederick Whitaker ("Whitaker"), seeking to compel payment of a $2 million settlement from the escrow fund. On July 24, the New York Court ordered the funds to be disbursed no later than July 31, 1997. Browning, acting as escrow agent, declined to pay the amount despite the New York Court order because (1) the Insurers instructed him not to and (2) the June 13 Order arguably enjoined disbursement from the escrow account.

7

On August 6, Weitz & Luxenberg moved the New York Court to hold Browning in contempt if the settlement proceeds were not paid by September 4, 1997. Browning wrote a letter to the Insurers informing them of the contempt motion and advising them that he planned to wire the funds to Weitz & Luxenberg on September 3 unless the Insurers obtained an order from the District Court directing him not to do so. The Insurers did not obtain an Order by the deadline set forth in the letter, and on September 3, Browning wired $2 million from the escrow account to a bank account held by Weitz & Luxenberg.

Later that same day, upon learning of the $2 million wire transfer, the Insurers terminated the Stich, Angell firm as escrow agent. The Insurers currently maintain control over the remaining funds (the $5.39 million formerly held in the escrow account, less the $2 million that was disbursed to settle the Whitaker suit) and have posted an additional interpleader bond of $3.39 million.

On September 8, the Insurers filed a motion seeking clarification of the original restraining order. The District Court ruled on the motion by order dated January 21, 1998 (hereafter, the "January 21 Order"). The District Court:

> MODIFIED [the June 13 Order] to include within the definition of "policies issued by the Plaintiffs to the Insurers" any funds held in escrow or otherwise by third parties, including funds in the escrow account previously held by Stich, Angell, Kreidler, Brownson & Ballou, P.C. as escrow holders.

The District Court then:

> DECLARE[D] that the transfer of the above-referenced funds to the law firm of Weitz & Luxenberg to settle the action styled Whitaker v. Asbestospray, et al., Supreme Court of New York, County of New York, Index No. 96-116205 constituted a violation of this court's order[sic] of June 13, 1997 and August 1, 1997.

The District Court did not impose sanctions or otherwise penalize the asserted violation of the June 13 Order.

8

E.

The January 21 Order also addressed several outstanding discovery matters. Prior to the issuance of the January 21 Order, Baltimore and other defendants requested discovery relating to the timing of thefiling of the interpleader action. The Insurers objected to some of the requests on the ground that they sought materials protected by attorney-client and work product privileges.

The District Court rejected the Insurers' assertion of privilege in its January 21 Order. The District Court ruled that the Insurers waived their attorney-based privileges by their assertedly untimely filing of the interpleader action:

> [W]e find the plaintiffs by bringing this action waived any attorney client privilege concerning why the action was brought, its timing, the existence of any garnishments against the fund, plaintiffs' own calculations of projected liabilities of the fund, as well as the transfer of insurance proceeds.

F.

After the District Court denied motions for reconsideration of its January 21 Order, the parties continued with discovery. On April 9, 1998, Baltimore moved to dismiss the interpleader action. The sole ground raised in Baltimore's moving papers was its contention that the District Court lacked subject matter jurisdiction because the interpleader bond was insufficient to cover the amount of policy proceeds in controversy. On August 28, the District Court dismissed the case based on (1) laches and (2) the asserted insufficiency of the interpleader bond.

The Insurers appeal the August 28 Order, as well as the District Court's rulings on their attorney-based privileges in its January 21 Order. Brownson, Stich, Angell, Whitaker and Weitz & Luxenberg appeal the District Court's determination in its January 21 Order that the transfer from the escrow fund violated the District Court's June 13 Order.

II.

A.

We first address whether we have jurisdiction over Stich, Angell's[1] appeal of the January 21 Order. We conclude that we do not, and we therefore dismiss that appeal.

Stich, Angell appeals the January 21 Order which purports to: (1) modify the June 13 Order and (2) declare the $2 million distribution in violation of the June 13 Order. Stich, Angell first argues that we have jurisdiction to hear its appeal pursuant to 28 U.S.C. S 1292(a)(1) (1994), which provides for appellate jurisdiction over "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

We do not have jurisdiction over Stich, Angell's appeal under S 1292(a)(1). We recognize that the January 21 Order purports to modify the June 13 Order, which by virtue of its duration was converted into a preliminary injunction, SEC v. Black, 163 F.3d 188, 194 (3d Cir. 1998), and that therefore it is plausible to assert jurisdiction under S 1292(a)(1). We reject S 1292(a)(1) as a jurisdictional basis, however, because the January 21 Order, despite some of its language, does not in fact modify the June 13 Order.

It is well settled that when determining our jurisdiction, we must examine the substance of the order rather than merely its language. Cromaglass Corp. v. Ferm , 500 F.2d 601, 604 (3d Cir. 1974) (en banc); Gregory v. Depte, 896 F.2d 31, 38 n.14 (3d Cir. 1990) (Becker, J., concurring in part and dissenting in part) ("[I]t is important to note that the labels attached by the district court to its order are not determinative"). Here, we conclude that the January 21 Order did not in fact modify the June 13 Order but instead clarified that, in the District Court's view, the June 13 Order applied to the funds held in escrow by Stich, Angell

_____

1. We refer to the Appellants Stich, Angell, Brownson, Whitaker and Weitz & Luxenberg collectively as Stich, Angell unless the context requires otherwise.

10

and thus prohibited their transfer to Weitz & Luxenberg. If the January 21 Order is not interpreted in this way as a clarification of the June 13 Order but is instead construed as a modification of that order (broadening it so as to make it applicable for the first time to the funds held in escrow), the District Court plainly would have had no basis for declaring that the prior transfer of funds to Weitz & Luxenberg was in violation of the earlier order. We recognize that the District Court did use the term "MODIFIED" in the June 13 Order, but we attribute this to a mistake in draftsmanship. It does not persuade us that the June 13 Order was in substance a modification rather than a clarification or interpretation, and our appellate jurisdiction under 28 U.S.C. S 1292(a)(1) does not extend to orders, such as the January 21 Order, that interpret or clarify injunctions. Motorola, Inc. v. Computer Displays Int'l, Inc., 739 F.2d 1149, 1155 (7th Cir. 1984).

Stich, Angell next argues that we have jurisdiction under the "collateral order" doctrine. This doctrine is a narrow exception to the final judgment rule under which a "small class" of collateral orders are deemed final even though they do not terminate the underlying litigation. Christy v. Horn, 115 F.3d 201, 203-204 (3d Cir. 1997) (quoting Cohen v. Beneficial Indus. Loan Co., 337 U.S. 541 (1949)). We have jurisdiction to review a collateral order only when the order: (1) finally resolves a disputed question; (2) raises an important jurisprudential issue distinct from the merits of the case; and (3) is effectively unreviewable on appeal from a final judgment. Christy, 115 F.3d at 203-204. Here, we see no reason why the January 21 Order would be unreviewable on appeal from an order fully disposing of the case. Nor do we agree with Stich, Angell's assertion that the issues raised by its appeal, which chiefly concern the interpretation of an order clarifying a preliminary injunction, are so important jurisprudentially that we should disregard the normal rule of finality. Compare Christy, 115 F.3d at 205 (appeal of order holding habeas corpus petition in abeyance pending exhaustion of constitutional claims in state court raised important jurisprudential issues in light of conflicting case law and "important nature of capital habeas cases in general"). The parties raise no other bases for appellate jurisdiction, and

11

we discern no other basis ourselves. Accordingly, we dismiss Stich, Angell's appeal of the January 21 Order.

B.

1. Laches

Next, we address the District Court's dismissal of the interpleader action based on laches. Because we conclude that the record was not sufficiently developed with respect to the possible justifications for the Insurers' delay in filing the interpleader, and further because we conclude that the District Court erred in calculating the period of delay, we vacate the District Court's order dismissing the interpleader and remand for further proceedings.

"Both the length of delay and the existence of prejudice are questions of fact to be reviewed by this court under the `clearly erroneous' standard." Churma v. United States Steel Corp., 514 F.2d 589, 593 (3d Cir. 1975); see also EEOC v. Great Atlantic & Pacific Tea Co., 735 F.2d 69, 84 (3d Cir. 1984). Whether delay is "inexcusable" on the facts presented is a conclusion of law over which our review is plenary. Great Atlantic, 735 F.2d at 81. If we agree with the district court's legal conclusion that a given historical delay is inexcusable, we review the court's assessment of the equities for abuse of discretion. Id.; see also Churma, 514 F.2d at 593

Because interpleader is an equitable proceeding, it is subject to dismissal based on equitable doctrines such as laches. In re Bohart, 743 F.2d 313, 325 (5th Cir. 1984). In this regard, it has ". . . been often stated-- although rarely held -- that interpleader is properly denied when the stakeholder is . . . guilty of laches." Id. at 326 n.11 (quoting 3A Moore's Federal Practice P 22.16[1] (1984)); see also 7 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d S 1709 (West 1986) ("[C]ourts are reluctant to refuse interpleader [for laches] since the inconvenience to the stakeholder and the courts that would result if multiple litigation, and possibly multiple liability, came to pass are at least as troublesome as rewarding the stakeholder's questionable conduct.").

12

The party asserting laches as a defensive bar must establish (1) an inexcusable delay in bringing the action and (2) prejudice. Great Atlantic, 735 F.2d at 81; Churma, 514 F.2d at 593. To establish prejudice, the party raising laches must demonstrate that the delay caused a disadvantage in asserting and establishing a claimed right or defense; the mere loss of what one would have otherwise kept does not establish prejudice. In re Bohart, 743 F.2d at 327 (reversing district court's dismissal of interpleader based on laches).

Here, the District Court held as a matter of law that the Insurers' delay in filing the interpleader action was unreasonable and prejudicial to potential claimants, and the Court accordingly dismissed the interpleader action with prejudice. Although laches was raised as an affirmative defense in Baltimore's answer to the interpleader, the only issue raised by Baltimore in its motion to dismiss -- and therefore the only matter as to which the Insurers were on proper notice to defend-- pertained to the asserted insufficiency of the interpleader bond. Moreover, because the motion to dismiss was couched solely in terms of the jurisdictional insufficiency of the interpleader bond, the Insurers were not provided an opportunity to present reasons for the delay infiling or to conduct discovery into the prejudice that Baltimore alleged it suffered.

Against this procedural canvas, the District Court held that "as a matter of law . . . the [Insurers] knew or should have known that the available insurance pool was insufficient as early as February 22, 1993," and that therefore they had "a duty to file the interpleader, if they were to do it at all," at that time. The Insurers' coverage under their excess policies, however, was not triggered until May 1995, when the primary layer of coverage was exhausted. The District Court erred in charging the Insurers with inexcusable delay during the period from February 1993 to May 1995, a time when the Insurers' duty to defend and indemnify had not been activated as a matter of law.

Furthermore, because the District Court ruled on an inadequate record, it did not have an opportunity to weigh

13

the Insurers' explanation for at least a portion of the delay after May 1995. When the policies were triggered in 1995, they were subject to Baltimore's valid default judgment against them entered by the Maryland Court as a discovery sanction. The Insurers claim that filing an interpleader when there existed a valid judgment against the policies would have subjected the claim to dismissal and charges of forum shopping. See, e.g., B.J. Van Ingen & Co. v. Connolly, 225 F.2d 740, 741 (3d Cir. 1955) (affirming dismissal of interpleader: "[T]his interpleader is an attempt to obtain in a federal forum a separate adjudication of a controversy which has arisen in the attempted enforcement of a decree of a state court"). On remand, the District Court should assess the credibility of the Insurers' explanation in determining whether the delay was inexcusable.2

The District Court also found that Baltimore and the other potential claimants against the res were prejudiced because the insurance proceeds were "dissipated" by the Insurers' practice of settling claims before the interpleader was filed, thereby leaving an insufficient fund to pay the remaining claims. But see In re Bohart, 743 F.2d 313 (5th Cir. 1984) (rejecting similar claim of prejudice and reversing district court's dismissal of statutory interpleader based on laches). As we mention above, the District Court did not receive briefing from the parties or permit discovery on the issue of prejudice. Accordingly, we vacate the District Court's finding of prejudice and remand so that a more complete record on this issue may be developed.3

_____

2. We note that, should the District Court credit the Insurers' explanation, the seven-month period from the time of vacatur to the commencement of the interpleader does not appear on its face to constitute an unreasonable delay. Cf. Great Atlantic, 735 F.2d at 78-85 (reversing district court's finding of inordinate delay despite three multi-
year long gaps in proceedings).

3. Baltimore also urges us to affirm the District Court based on the doctrine of unclean hands. We agree with the Insurers that the District Court's dismissal was not based on unclean hands and that the reference to the doctrine in the District Court's opinion was intended instead to provide an example of the type of equitable considerations that may, in general, justify the dismissal of an interpleader action.

14

## 2. The Amount of the Interpleader Bond

The District Court rested its dismissal on the alternative basis that the interpleader bond was insufficient because it did not cover the entire proceeds of the insurance policies -- $25 million -- or even the funds deposited in the escrow account. However, because the original interpleader bond of $3.88 million deposited with the District Court represents the amount of proceeds reasonably in controversy, we conclude that the District Court erred in dismissing the interpleader based on the alleged insufficiency of the bond.

A proper deposit or bond is a jurisdictional prerequisite to bringing an interpleader. 28 U.S.C. S 1335(a)(2) (1994); In re Sinking of M/V Ukola, 806 F.2d 1, 5 (1st Cir. 1986); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d S 1716 (West 1986). The stakeholder invoking interpleader must deposit the largest amount for which it may be liable in view of the subject matter of the controversy. 28 U.S.C. S 1335(a)(2) (1994); CNA Ins. Cos. v.

_____

In the event that the unclean hands theory is pressed on remand, we note that the record as it presently stands contains insufficient evidence to establish unclean hands. To the extent the District Court found inequitable conduct that might be equated with "unclean hands," its finding was based on the assertedly improper delay and the allegedly improper decision to "dissipate" the insurance policy proceeds prior to filing the interpleader. We have vacated the District Court's finding of unreasonable delay, and note that even if the District Court finds on remand that the Insurers unreasonably delayed for purposes of determining whether laches should bar the action, it does not necessarily follow that the Insurers were guilty of unclean hands by acting fraudulently, unconscionably or in bad faith. See S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 377 n.7 (3d Cir. 1992). Furthermore, the "dissipation" identified by the District Court, even if proven true, would not, without a further finding of fraud, unconscionability, or bad faith, constitute unclean hands. See Douglas-Guardian Warehouse Corp. v. Ramy Seed Co., 271 F.2d 24, 28 (8th Cir. 1959) (plaintiff had "clean hands" even though the property he tendered to the court was insufficient to satisfy all the demands of the interpleaded claimants).

15

Waters, 926 F.2d 247, 249-50 n.6 (3d Cir. 1991); M/V
Ukola, 806 F.2d at 5.4

Here, the Appellees claim entitlement to the entire $25
million in insurance proceeds, and they therefore argue
that this amount should be deposited with the Court. The
determination of the appropriate deposit, however, is not a
mechanical process under which the court uncritically
searches for the highest amount claimed by the adverse
claimants and requires that amount to be deposited; rather,
the determination "depends upon the person who invokes
the interpleader and what he asserts to be the subject
matter of the controversy." M/V Ukola, 806 F.2d at 5.
Amounts that are not realistically within the scope of the
interpleader as pleaded are not required to be deposited or
bonded to sustain federal jurisdiction. Id.; 7 Wright, Miller
& Kane, Federal Practice and Procedure: Civil 2d S 1716
(West 1986) ("[T]he court will have to inquire into the
underlying merits of a claim to determine proper amount of
the deposit or bond.").

In this case, the sum put into controversy by the
interpleader complaint was $3.88 million -- the
unexhausted proceeds of the policy. See Aetna Cas. &
Surety Co. v. Ahrens, 414 F. Supp. 1235, 1254 (S.D. Tex.
1975) (where an interpleader involves liability insurance
proceeds, the money or property in dispute is the
unexhausted policy limits and plaintiff need only deposit
unexhausted policy limits at the time of interpleader). In
the absence of a claim of collusion or fraud on the part of

_____

4. Even if the District Court were correct that the interpleader bond of
$3.88 million was insufficient, it erred in dismissing the complaint
without affording an opportunity to cure. "The law is clear . . . that
[the
stakeholder] [is] permitted to cure this defect by making an additional
deposit with the court registry." Waters, 926 F.2d at 250 n.6.

Indeed, the Insurers have bonded the sum that remains in the former
Stich, Angell escrow and placed it under the District Court's
jurisdiction.
Although, as we explain below, we conclude that the Insurers need not
have deposited sums already committed to settlements in principle to
satisfy the jurisdictional requirements of the interpleader statute, that
they have done so points to the error of the District Court's dismissal
without affording the Insurers the opportunity to cure.

16

the Insurers in settling claims prior to the commencement of the interpleader -- and no such claim is before us -- there is no merit to the Appellees' claims to sums beyond the $3.88 million that remains in unexhausted policy proceeds.5 The sums that have been paid out or contractually committed to settle ongoing, pre-interpleader lawsuits from other state courts were not realistically part of the interpleader action as it was pleaded, and therefore these sums were not required to be deposited with the court to sustain federal jurisdiction.

We note as well that the District Court's expansive view of its interpleader jurisdiction is inconsistent with the limited nature of the interpleader device. An injunction issued pursuant to 28 U.S.C. S 2361 "must not be overbroad." 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d S 1717 (West 1986). The injunction cannot extend to litigation involving the fund that is not within the subject matter of the interpleader. State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 535 (1967) ("[I]nterpleader was never intended . . . to be an all-purpose `bill of peace.' "); Commercial Sec. Bank v. Walker Bank & Trust Co., 456 F.2d 1352, 1355-56 (10th Cir. 1972) (injunction exceeded permissible scope when it purported to enjoin litigation beyond the res); Knoll v. Socony Mobil Oil Co., 369 F.2d 425, 429 (10th Cir. 1966) (injunction barring litigation involving title to oil-producing land void for lack of jurisdiction where the interpleaded fund consisted solely of disputed revenues produced by sale of oil taken from the land: "This was an in personam exercise of jurisdiction. In an interpleader action, however, in personam jurisdiction extends only to the fund deposited with the court"),

_____

5. Our mandate does not prevent Baltimore or the other Appellees from seeking in other fora to recover from the Insurers personally based on other legal theories, such as the theory that they violated the Maryland Court's writ of garnishment. Our statement regarding the viability of the Appellees' claims to sums beyond the unexhausted policy proceeds is limited to the context of this interpleader action alone. Cf. Douglas-Guardian, 271 F.2d at 28 ("In the event that any of the defendants have claims against the plaintiff, as distinguished from claims to this property, such claims can be asserted; however, plaintiff should not be required to give a bond to cover such claims.").

17

overruled on other grounds by Liberty Nat. Bank & Trust Co. v. Acme Tool Div., 540 F.2d 1375, 1381 (10th Cir. 1976); see Continental Illinois Nat. Bank & Trust Co. v. R.L. Burns Corp., 552 F. Supp. 113, 114 (N.D. Ill. 1982) ("Subject matter jurisdiction under S 1335 is limited to the resolution of conflicting claims to the fund in controversy.").

Because the injunction available under S 2361 is an exception to the generally applicable rule barring federal injunctions of state court proceedings, 28 U.S.C. S 2283 (1994), federal courts should defer to parallel state proceedings that pre-date the interpleader, especially where, as here, the proceedings have resulted in judgments (or settlements in principle). See NY Life Distribs., Inc. v. Adherence Group, Inc., 72 F.3d 371, 381 (3d Cir. 1995) (district court retains equitable discretion to determine whether "the issues raised in an interpleader action may be better resolved in a state court"); see also  7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d S 1717 (West 1986). The friction between the New York State Court and the District Court in this case points out the undesirable consequences of an interpleader injunction that is overly broad and unduly interferes with parallel state-court proceedings.

The District Court erred when it concluded that the pre-interpleader settlements were part of the res properly subject to its interpleader jurisdiction, and therefore erred in dismissing the interpleader based on the alleged insufficiency of the interpleader bond. Accordingly, we vacate the District Court's order dismissing the interpleader for lack of jurisdiction.

3. The District Court's Privilege Rulings

Finally, the Insurers object to the District Court's ruling, in its January 21 Order, that the Insurers waived the attorney-client and attorney work product privileges by allegedly placing privileged material directly at issue in this suit. We agree with the Insurers that the District Court erred in so ruling.

A party may waive attorney-based privileges by asserting "claims or defenses that put his or her attorney's advice in

18

issue in the litigation." Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994). A party waives the privilege only when he or she "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue." Id. (citing as an example of waiver a defendant who asserts reliance on advice of counsel as a defense); see also Livingstone v. North Belle Vernon Borough, 91 F.3d 515, 537 (3d Cir. 1996) (assertion of defense directly implicating advice of counsel waives attorney-client privilege as to that issue), cert. denied, 520 U.S. 1142 (1997).

In this case, the Insurers did not assert any claim or take any affirmative step that placed the advice of counsel at issue. Rather, they argued based on the record and in defense of a laches claim that the delay in filing the interpleader was objectively justified. Neither the fact that the Insurers raised this argument nor the timing of the interpleader action can be interpreted as an affirmative waiver of the attorney-based privileges. We reverse the District Court's contrary ruling.

III.

For the foregoing reasons, we dismiss Stich, Angell's appeal of the January 21 Order for lack of jurisdiction, vacate the August 28 Order dismissing the interpleader for laches and lack of subject matter jurisdiction, reverse the January 21 Order insofar as it declared that the Insurers waived the attorney-client and work product privileges, and remand for further proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

19