CLD-315                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2128
_____

AMERICAN BOARD OF SURGERY, INC,

v.

KEITH A. LASKO; AMERICAN BOARD OF GENERAL SURGERY;
ACADEMY OF SURGERY AND AMERICAN COUNSEL OF GENERAL
SURGEONS; AMERICAN COUNCIL OF SURGICAL SPECIALISTS

Keith A. Lasko,
                              Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-10-cv-01857)
District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 3, 2013

Before:  RENDELL, JORDAN and SHWARTZ, Circuit Judges

(Opinion filed: July 25, 2013)
_____

OPINION
_____

PER CURIAM

Pro se defendant-appellant Keith Lasko challenges an order finding him in civil contempt. Plaintiff-appellee American Board of Surgery, Inc. (ABS) challenges our jurisdiction and requests that we dismiss this appeal. For the following reasons, we will exercise jurisdiction and summarily affirm.

I.

ABS sued Lasko in 2010, alleging that he had engaged in unfair and deceptive trade practices by creating corporate shells with names similar to other, respected medical organizations, for the purpose of selling illegitimate certifications and memberships under the names of those groups. ABS eventually moved for sanctions in the form of a default judgment, as Lasko had, inter alia, flouted his discovery obligations—in one instance, by failing to appear for a previously scheduled deposition at significant expense to ABS.

Agreeing that sanctions were warranted, the District Court granted a default judgment in favor of ABS, awarding damages and attorney fees. Also, pursuant to the Lanham Act (15 U.S.C. § 1116(a)), the District Court enjoined Lasko from a) using "any and all of" an enumerated list of organization names; b) using three specified websites; c) selling status-related privileges "related to any purported medical organization including, *but not limited to*" the organizations previously listed; and d) soliciting "certificates, use of letters, membership, or diplomat, fellow, or board of director status related to any purported medical organization including, *but not limited to*" the organizations previously listed. See Order 5–8, ECF No. 46 (emphasis added). The District Court also entered

2

judgment in favor of ABS.

About a year and a half later, ABS filed a motion for civil contempt, alleging that Lasko continued "to engage in the exact same unlawful conduct." Mem. of Law 1, ECF No. 48. ABS attached to its motion a letter from an organization called the "National Academy of Medicine," which was "strikingly similar to [materials] previously used by Lasko in connection with . . . the . . . entities identified in the Court's Order." Mem. of Law. 4–5; see also Ex. C, ECF No. 48-1.

The District Court held a hearing on the contempt motion, at which Lasko appeared pro se. ABS explained that while the injunction did not prohibit the use of the name "National Academy of Medicine," it did prohibit, among other things, the "use of letters" in connection with "any purported medical organization." Tr. 8:24–9:5. Lasko conceded that he had received the District Court's final order, see Tr. 15:2–4, and did not dispute that he created the National Academy of Medicine, see Tr. 16:10–16. He further essentially admitted to sending the letters in question. Tr. 20:6–8. Throughout, Lasko insisted that his conduct was covered under the religious protections of the First Amendment. See, e.g., Tr. 41:19–24 ("THE COURT: So your position is that the first amendment, freedom of religion . . . allows you to send these letters? Is that your position? MR. LASKO: Yes, it is.").

Having taken testimony, the District Court asked ABS to clarify what it was requesting from the Court. Tr. 47: 6–9. In addition to fees and other sanctions, ABS asked for the Court to issue a more specific directive covering the National Academy of Medicine and other organizations Lasko had begun to use since judgment was entered.

3

See Tr. 47:18–48:3.

Ultimately, the District Court found Lasko in contempt and enjoined him from "us[ing] . . . the names National Academy of Medicine, American Institute of Geriatrics, National Academy of Dental Sciences, American Academy of Dental Sciences and United States Academy of Dental Sciences for any purpose." Order ¶ 3, ECF No. 54; see also Tr. 51:6–9 (finding Lasko's conduct to be "clearly, definitively and one hundred percent" prohibited by the original injunction). The District Court declined to levy sanctions "at this time," but allowed ABS to present "evidence of further violations of the Court's orders" within a six-month time frame, at which point a "hearing" would be convened "to determine the appropriate penalty." Order ¶ 4; see also Tr. 55:19–24 (announcing an intent to "maintain[] jurisdiction" over the matter of sanctions). Lasko filed a timely notice of appeal.[1]

## II.

In its summary-action response, ABS suggests that we lack jurisdiction over this appeal. We must determine our own jurisdiction before reaching the merits of the case. See Elliott v. Archdiocese of N.Y., 682 F.3d 213, 219 (3d Cir. 2012) (citations omitted).

ABS argues that the contempt order is not final under 28 U.S.C. § 1291 because it did not impose sanctions and "kept the matter open for six months." Thus, according to ABS, "the Order from which Mr. Lasko seeks to appeal is a non-appealable interlocutory

---

[1] The notice of appeal is timely filed from the order granting ABS's motion for civil contempt. See Fed. R. App. P. 4(a)(1)(A). It is not timely filed in relation to the District Court's original default judgment order, despite the Court's noncompliance with Fed. R. Civ. P. 58. Thus, we lack jurisdiction over the default judgment and original permanent injunction.

order, which this Court lacks jurisdiction to review." Resp. 2.

A post-judgment civil contempt order is considered a final, immediately appealable order under § 1291 once a finding of contempt is made and a sanction imposed. See United States v. Gonzales, 531 F.3d 1198, 1202 (10th Cir. 2008) (collecting cases); see also U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers, 601 F.2d 1269, 1273 (3d Cir. 1979). Having found Lasko in contempt, the District Court explicitly retained jurisdiction to make a future determination of sanctions, but not necessarily a redetermination of contempt, if Lasko persisted in violating the permanent injunction. We are in accord with ABS that the District Court's order lacks the "elements of operativeness and consequence necessary" to be a final decision under 28 U.S.C. § 1291, precluding an exercise of jurisdiction under that section. Consumers Gas & Oil v. Farmland Indus., 84 F.3d 367, 370 (10th Cir. 1996) (internal quotation marks and citation omitted).

However, certain nonfinal interlocutory orders, such as those modifying injunctions, are appealable pursuant to 28 U.S.C. § 1292(a)(1). Also, "one who is a party may appeal from a civil contempt order in connection with some other appealable order." United States v. Spectro Foods Corp., 544 F.2d 1175, 1179 (3d Cir. 1976). Moreover, "[o]nce vested with section 1292(a)(1) jurisdiction, we may also review the district court's finding of civil contempt." Int'l Bhd. of Teamsters, Warehousemen & Helpers of Am., Local 249 v. W. Pa. Motor Carriers Ass'n., 660 F.2d 76, 81 (3d Cir. 1981) (citing Spectro Foods, 544 F.2d at 1179). We must therefore determine whether the District Court's contempt order contains elements that would bring it within the ambit of

5

§ 1292(a)(1).

"For an interlocutory order to be appealable under 28 U.S.C. § 1292(a)(1) . . . as an order modifying an injunction, two requirements appear to be necessary and must be satisfied: (i) the original or prior order must have been injunctive in character, and (ii) that injunction must have been modified in some respect by the order from which the appeal has been taken." Hoots v. Pennsylvania, 587 F.2d 1340, 1348 (3d Cir. 1978). An injunction is "affirmatively defined as follows: [o]rders that are directed to a party, enforceable by contempt, and designed to accord or protect some or all of the substantive relief sought by a complaint in more than a temporary fashion." Cohen v. Bd. of Trustees, 867 F.2d 1455, 1465 n.9 (3d Cir. 1989) (en banc) (internal quotation marks, alterations, and citation omitted). We construe appealability pursuant to § 1292 narrowly, see N.J. State Nurses Ass'n v. Treacy, 834 F.2d 67, 70–71 (3d Cir. 1987), and must pay special attention to the distinction between a "modification" of an injunction, which is appealable, and the clarification of one, which is not. See Entegris, Inc. v. Pall Corp., 490 F.3d 1340, 1345 (Fed. Cir. 2007). In so doing, we must "examine the substance of the order rather than merely its language." U.S. Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 207 (3d Cir. 1999).

We conclude that the District Court's contempt order qualified, in part, as a "modification" of a permanent injunction, and is thus appealable under § 1292(a)(1). The original order granted a Lanham Act injunction consisting of two categories of restrictions: exhaustive, closed lists of names and websites that Lasko could not "use"; and nonexhaustive, illustrative lists of "purported medical organization[s]" on whose

6

behalf Lasko was prohibited from soliciting and marketing.  The contempt order added five names to the previously exhaustive list of organizations whose monikers and operations were forbidden to be used for any purpose.  This changed the character of the injunction.  For example, while solicitation on behalf of the "National Academy of Dental Sciences" would fall under the terms of the original permanent injunction, merely using the name would not.  Under the contempt order's modification, however, use itself would be prohibited.  By expanding the scope of the permanent injunction, the District Court "modified" it within the meaning of § 1292(a)(1) and our prior case law, rendering the contempt order appealable.

Therefore, we will exercise jurisdiction over the contempt order pursuant to 28 U.S.C. § 1292(a)(1), and must therefore deny ABS's submission to the extent that it was a motion to dismiss.[2]  Both the modification of an injunctive decree and a finding of civil contempt are reviewed for abuse of discretion.  Lone Star Steakhouse & Saloon v. Longhorn Steaks, 106 F.3d 355, 364 (11th Cir. 1997) (citation omitted); Harris v. City of Phila., 47 F.3d 1311, 1321 (3d Cir. 1995).  Our jurisdiction does not otherwise extend to "the merits of the underlying [permanent injunction or judgment]," which "may not be called into question in a post-judgment civil contempt proceeding."  Halderman v. Pennhurst State Sch. & Hosp., 673 F.2d 628, 637 (3d Cir. 1982) (en banc).

III.

We consider first the finding of civil contempt itself, which must be supported by

---

[2] Because we can exercise jurisdiction under § 1292(a)(1), we need not reach whether the collateral order doctrine also would permit this appeal.  See Asbestospray, 182 F.3d at 207–08.

7

clear and convincing evidence but will otherwise "only be disturbed if there is an error of law or a clearly erroneous finding of fact." Harris, 47 F.3d at 1321. "To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." Id. at 1326 (citing Roe v. Operation Rescue, 919 F.2d 857, 871 (3d Cir. 1990)). "[G]ood faith is not a defense to civil contempt." Robin Woods Inc. v. Woods, 28 F.3d 396, 399 (3d Cir. 1994). However, ambiguities in an order are construed in favor the charged party. Id.

As discussed above, Lasko admitted knowledge of the permanent injunction and had not otherwise challenged its validity. His arguments before the District Court (which he repeats on appeal) amounted to reliance on the allegedly religious character of his solicitations, which he maintained should carve out an exception for his conduct under the Constitution. He failed to explain, however, how religious character was relevant. To the contrary, ABS showed that, following his being enjoined by the District Court, Lasko sent out a solicitation under the name "National Academy of Medicine" that mimicked precisely the conduct to which the ABS originally objected: questionable representation as a "medical organization" with a conspicuous element of remuneration from the honorary titles and degrees allegedly bestowed. The July 21, 2012 letter informed the recipient of his candidacy for an alleged "award" that would elevate him to the "Scientific Advisory Board" of the "National Academy of Medicine"—for a fee, of course. This communication falls squarely within the conduct prohibited by the permanent injunction, and took place after the District Court enjoined Lasko. Hence, the District Court did not err in finding Lasko to be in contempt.

Next, we consider whether the modification of the injunction "effectuate[d] or thwart[ed] the purpose behind the permanent injunction." Sierra Club v. U.S. Army Corps of Eng'rs, 732 F.2d 253, 257 (2d Cir. 1984). Although modification of the injunction was arguably unnecessary (as the District Court itself remarked during the contempt hearing) to prevent any further misconduct, the District Court has broad discretion in fashioning a remedy. Woods, 28 F.3d at 399 (citation omitted). On the present record, and especially given the character of the unchallenged, original permanent injunction, we cannot say that the addition of five more shell companies amounted to an abuse of discretion.

IV.

For the foregoing reasons, we find no substantial question to be presented by this appeal, and will summarily affirm the District Court's judgment. See Murray v. Bledsoe, 650 F.3d 246, 248 (3d Cir. 2011) (per curiam); see also 3d Cir. L.A.R. 27.4; 3d Cir. I.O.P. 10.6. To the extent that Lasko's submissions request independent relief, they are denied.