**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4336
_____

UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK

v.

ABRAHAM HOLTZMAN; NEW JERSEY DEPARTMENT OF HUMAN SERVICES
DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES

Abraham Holtzman,
                                                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-14-cv-00113)
District Judge:  Honorable Freda L. Wolfson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 22, 2018

Before: JORDAN, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 26, 2018)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

This appeal arises out of an interpleader action brought by the United States Life Insurance Company in the City of New York ("U.S. Life") to determine the rights of competing claims to insurance benefit payments between appellant Abraham Holtzman and the New Jersey Department of Human Services, Division of Medical Assistance and Health Services ("DMAHS"). The District Court granted judgment on the pleadings in favor of DMAHS. We will affirm.

In 1996, Holtzman obtained an insurance policy through the New York State United Teachers ("NYSUT") Catastrophe Major Medical Insurance Plan from U.S. Life on behalf of himself and his parents, Jacob and Zipora Holtzman. The Group Policy provided benefits for care incurred by an insured while in a convalescent home or custodial care facility. At certain times between June 2002 and April 2005, Jacob and Zipora were residents at Bergen Regional Medical Center.[1] On February 1, 2004, Holtzman filed a claim with Marsh Affinity Group Services ("Marsh")[2], the Administrator of the group policy, seeking reimbursement for expenses related to these periods of long-term care.

Marsh notified Holtzman that the benefits exceeded the policy's $25,000 deductible. Marsh was subsequently informed that DMAHS, which administers New

---

constitute binding precedent.

[1] Jacob was a resident from June 5, 2002 to April 24, 2004; Zipora was a resident from December 1, 2002 to April 25, 2005.

[2] Marsh is a service of Seabury & Smith NYSUT Insurance Plan.

Jersey's Medicaid Program[3], had made payments on behalf of Jacob and Zipora. Over a series of correspondences in 2007 and 2008, Marsh notified Holtzman that Medicaid is intended to be the "payor of last resort," and that recipients of Medicaid benefits "are required to assign to the state any rights to payment for medical care from any legally liable third party payer." Marsh concluded that, as a private insurance policy, the Group Policy was required to pay its benefits before Medicaid, and that, therefore, DMAHS was entitled to reimbursement for the benefits it had paid out-of-turn, up to the policy maximum. Holtzman responded in a letter that he had not assigned any benefit rights to Medicaid, and that he had incurred medical expenses, prior to and during Medicaid eligibility, that have priority over the Medicaid payments. Medicaid sought reimbursement from Marsh in the amount of $139,064.58 and $180,507.46 for payments it made on behalf of Jacob and Zipora, respectively. Marsh informed Holtzman that it had determined it was statutorily liable to reimburse Medicaid as demanded by DMAHS. Holtzman appealed the decision, and subsequent negotiations between the parties were unsuccessful.

Marsh determined that, under the policy provisions, $46,929.51 in benefits was due for Jacob's expenses, and $62,501.25 in benefits was due for Zipora's. To avoid the possibility of multiple liability and multiple litigation, U.S. Life filed this interpleader

---

[3] Medicaid is a jointly funded state and federal medical assistance program for individuals whose income and resources are insufficient. See 42 U.S.C. § 1396 et seq.; N.J.S.A. 30:4D-4, 4D-5.

action as a stakeholder, admitting that it was liable for these benefit payments, and seeking a determination as to which claimant was entitled to receive the benefit payments.

Holtzman filed a motion to dismiss arguing, inter alia, that the District Court lacked both subject matter and personal jurisdiction. U.S. Life filed a cross-motion for interpleader relief, seeking to be discharged from all liability stemming from benefits payable under the Group Policy. The District Court denied the motion to dismiss, and granted U.S. Life's motion for interpleader relief, conditioned upon U.S. Life depositing the disputed $109,430.76 into the Court's registry. In its opinion and order entered November 15, 2016, the District Court determined that, "based on the clear state and federal statutory scheme of Medicaid," Op. at 7, DMAHS was entitled to the funds, less attorneys' fees and costs. It therefore granted DMAHS's motion for judgment on the pleadings, and, in an order entered November 16, 2016, ordered the release of funds plus interest to DMAHS. Holtzman appealed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. Our review of an order granting a motion for judgment on the pleadings under Rule 12(c) is plenary. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 253 (3d Cir. 2004). Upon review, we conclude that the District Court properly entered judgment in favor of DMAHS.

I.

As he did below, Holtzman challenges the District Court's jurisdiction to entertain this interpleader action. Pursuant to the interpleader statute, a party may file an

4

interpleader complaint where there is a possibility of exposure to double or multiple liability. 28 U.S.C. § 1335; see Metro. Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007) ("Interpleader allows the stakeholder to file suit, deposit the property with the court, and withdraw from the proceedings. The competing claimants are left to litigate between themselves."). Jurisdiction is established for statutory interpleader[4] where (1) the amount in controversy is at least $500; (2) two or more adverse claimants are of diverse citizenship; and (3) the funds at issue have been deposited in the Court's registry. 28 U.S.C. § 1335(a); NYLife Distribs., Inc. v. Adherence Grp., Inc., 72 F.3d 371, 374 (3d Cir. 1995). Holtzman argues that the last two of these requirements have not been met.

Holtzman first challenges the diversity of claimants. The complaint alleged that DMAHS was a citizen of New Jersey and Holtzman was a citizen of New York. Holtzman argues on appeal that diversity is lacking because, although he maintains a residence in New York, he is a citizen of New Jersey. This assertion is belied by his admissions in the District Court. See Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972) (explaining that judicial admissions are also binding in a case on appeal). Holtzman argued in his motion to dismiss that the District Court lacked personal jurisdiction over him -- as a "Resident and Citizen of the state of New York." App. at 65. Subsequently, in his answer to the complaint, he asserted that, effective "on or about July

_____

[4] In its complaint, U.S. Life cited both to statutory interpleader and rule interpleader, Fed. R. Civ. P. 22, in the initial paragraph, but only relied on § 1335 under the "Jurisdiction and Venue" section, and throughout its moving papers. The District Court properly

5

2014," he is a resident of the state of New Jersey. App. at 178. The existence of diversity jurisdiction is generally determined at the time the complaint is filed, which in this case was January 7, 2014, prior to his "effective" date of residency in New Jersey. See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 429 (1991); Nationwide Mut. Fire Ins. Co. v. T & D Cottage Auto Parts & Serv., Inc., 705 F.2d 685, 688 (3d Cir. 1983) (diversity jurisdiction determined "by the facts that existed at the time the complaint was filed"); see also Rosado v. Wyman, 397 U.S. 397, 405 n.6 (1970) (noting "the well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile"). Accordingly, the District Court's determination that Holtzman was a citizen of New York is not clearly erroneous, and diversity jurisdiction between the two claimants existed. See McCann v. Newman Irrevocable Trust, 458 F.3d 281, 286 (3d Cir. 2006).

Holtzman next argues that jurisdiction was lacking because U.S. Life failed to deposit the funds at issue into the registry at the time the complaint was filed. See U.S. Fire Ins. Co. v. Asbestospray, Inc., 182 F.3d 201, 210 (3d Cir. 1999) (recognizing that the stakeholder deposit is a "jurisdictional prerequisite" to an interpleader action). The District Court rejected this argument in denying the motion to dismiss, citing our decision in CNA Ins. Co. v. Waters, 926 F.2d 247 (3d Cir. 1991). In that case, the stakeholder had

_____

determined that this is a statutory interpleader action, and that, regardless, Rule 22 could not provide a basis for jurisdiction because there is not complete diversity of parties.

6

deposited only a portion of the disputed funds into the registry at the time of filing the complaint. We noted that the failure to deposit all of the funds at issue was a jurisdictional defect which could be cured. Id. at 249 n.6. Holtzman argues on appeal that the District Court's reliance on CNA Ins. Co. was misplaced because, unlike the stakeholder in that case, U.S. Life did not initially deposit *any* funds into the registry. We need not address the scope of CNA, because we find that, under the circumstances of this case, the District Court properly allowed U.S. Life to perfect jurisdiction.

Under the local rules, U.S. Life could not have deposited the funds absent a court order to do so. See N.J. Local Civ. R. 67.1(a)(1)(A). Having determined that interpleader was proper, the District Court *conditioned* its October 14, 2014 order denying the motion to dismiss, and granting the cross-motion for interpleader relief, upon U.S. Life depositing the $109,430.76 into the Court's registry. See Auto Parts Mfg. Miss., Inc. v. King Const. of Houston, LLC, 782 F.3d 186, 194 (5th Cir. 2015) (noting that, in "the first stage of interpleader," the court only is concerned with whether the jurisdictional requirements have been met – "whether multiple claims have been asserted, or may be asserted, against a disinterested stakeholder, not whether those claims have merit."). Once U.S. Life responded to the Court's directive to deposit, the District Court had subject matter jurisdiction: its order discharging U.S. Life took effect, and it properly considered the merits of the adverse claims to the funds.[5]

---

[5] This approach is consistent with that taken regularly by district courts where the amount of funds at issue is undisputed: providing a stakeholder the opportunity to comply with

7

II.

We can dispense quickly with Holtzman's remaining arguments. First, he asserts that U.S. Life did not have the capacity to sue or be sued because it "falsely claims to be organized under the laws of New York." Appellant's Br. at 21; see also Fed. R. Civ. P. 17(b)(2) (a corporation's capacity to sue or be sued is governed by the law under which it was organized). As the District Court explained, however, U.S. Life established that it was organized and licensed under New York Insurance Law, N.Y. CLS Ins. § 1201, and that it remained active and in good standing. This was sufficient to establish its capacity to maintain the interpleader action. See N.Y. CLS Bus. Corp. §§ 102(4), 202(a)(2). We will not entertain Holtzman's next argument -- that the action should have been dismissed for laches -- because he failed to raise it before the District Court. See Tri-M Group, LLC v. Sharp, 638 F.3d 406, 416 (3d Cir. 2011). In any event, he could not prevail on such a claim, as he cannot demonstrate he was prejudiced by the alleged delay in filing suit. See U.S. Fire Ins. Co., 182 F.3d at 208. Holtzman also argues that the District Court judge was biased because the Attorney General of New Jersey, who represents

the deposit requirement upon determining that the other two jurisdictional requirements have been met. See e.g. N.Y. Life Ins. Co. v. Apostolidis, 841 F. Supp. 2d 711, 717 (E.D.N.Y. 2012); see also Charles A. Wright, Arthur R. Miller et al., 7 Federal Practice and Procedure: Civil § 1716 (3d ed. 2017) (noting that "[t]he case will not proceed unless this jurisdictional requirement is satisfied, although the court generally will give the stakeholder a second opportunity to comply before dismissing the action"); see generally Wayzata Bank & Tr. Co. v. A & B Farms, 855 F.2d 590, 593 (8th Cir. 1988) (determining that stakeholder had perfected subject matter jurisdiction where the funds at issue were deposited into registry upon limited remand from appeal).

8

DMAHS, is her former law clerk.  See 28 U.S.C.A. § 144.  He asserts that he did not raise this matter in the District Court because he was unaware of the connection. Nevertheless, Holtzman has failed to allege any facts which would create the appearance of impropriety such that recusal was warranted, see eg. Liteky v. United States, 510 U.S. 540, 556 (1994), or which would lead a reasonable person to conclude that the judge's impartiality was suspect.  See In re Kensington Int'l Ltd., 368 F.3d 289, 296 (3d Cir. 2004).[6]

Finally, for substantially the reasons set forth by the District Court in its opinion, judgment on the pleadings was warranted in favor of DMAHS.  In sum, because Medicaid is intended to be the payor of last resort, DMAHS is required to seek reimbursement from any third party responsible for Jacob and Zipora Holtzman's medical expenses.  See 42 U.S.C. §§ 1396a(a)(25)(A), (B); N.J.S.A. §§ 30:4D-2, 4D-7(k).  Holtzman argues on appeal that the District Court failed to explain how he is a liable third party pursuant to § 30:4D-7(k).  He misconstrues the District Court's

---

[6] Holtzman contends that there was an ex parte communication between the District Court judge and U.S. Life, from which he can safely presume that there is a "direct behind the scenes connection between the judge and her ex-law clerk."  Appellant's Reply Br. at 20.  The communication at issue was from Chambers staff to U.S. Life, directing it to file "supplemental briefing on the issue whether [it] deposited the interpleader funds with the Clerk's office when the complaint was filed."  11/24/15 Order at 3.  We agree with the District Court that there was nothing "untoward" about the communication.  Id.  at 4.  Holtzman's assertion that U.S. Life was given an "unfair advantage [to] prevail on its jurisdictional argument," Appellant's Br. at 30, is controverted by his letter dated October 20, 2014, to the Court claiming that "not one single assertion and/or statement made by" him in his motion to dismiss "was rebutted or

decision, which properly determined that U.S. Life, not Holtzman, was a liable third party under the statute and pursuant to the Group Policy; it was, therefore, responsible for reimbursing DMAHS for payments made on behalf of Holtzman's parents for their custodial care.

Holtzman argues further that, to the extent the New Jersey statute requires U.S. Life to remit payments to DMAHS instead of him, the law impairs U.S. Life's obligation to him under the contract in violation of Article 1, § 10, Clause 1 of the U.S. Constitution (the Contract Clause). As the District Court noted, however, Jacob and Zipora Holtzman, as recipients of Medicaid funds, are "deemed to have assigned to the commissioner any rights . . . to payment for medical care from any third party." N.J.S.A. 30:4D-7.1(c); see also 42 U.S.C. §§ 1396a(a)(45), 1396k(a)(1)(A). Accordingly, rather than abrogating its contractual responsibilities, U.S. Life was acknowledging DMAHS's statutory right of subrogation to the benefit payments, thereby preventing Holtzman from reaping an unintended windfall. See Tristani v. Richman, 652 F.3d 360, 370 (3d Cir. 2011) (noting that the reimbursement and forced assignment provisions of Medicaid "allow states to recoup their expenditures for medical assistance payments" while "protect[ing] the public fisc and ensur[ing] that beneficiaries [do] not receive a windfall by recovering medical expenses they did not pay").

III.

---

addressed" by U.S. Life's supplemental brief. Dist. Ct. Docket at 37. And, in any case, the communication did not involve the Attorney General.

For the foregoing reasons, we will affirm the District Court's grant of judgment on the pleadings, and its order directing the distribution of funds.